*RMC*

**_Redeemed Mortgage Consultants_**

***a Unit of Pacific Villa Asset Holdings, LLC***

17702 Eric Avenue, Cerritos, CA 90703

Phone: 714-944-7642; Michael.carrigan@rocketmail.com

# *SECURITIZATION and CHAIN OF TITLE AUDIT*

***Prepared for:***

***David and Patricia Morgensen***

***For Property Address***

***375 Woodland Drive***
***Scotts Valley, CA 95066***

***Prepared on:***

***March 26, 2015***

Disclosure: You have engaged Redeemed Mortgage Consultants to conduct a review of the primary mortgage loan on the subject property for evidence of sale and securitization to third party investors and other discrepancies involved in, where applicable, the foreclosure process. This information should not be considered legal advice or the practice of law pursuant to Business and Professions Code § 6125 et. seq. Property owners, borrowers or other interested parties procuring this work product should consult with expert counsel regarding their particular needs in regard to lender negotiation, litigation or other actions; and information should only be forwarded upon advice of such counsel. This is not a Forensic Audit Report necessarily involving the underwriting process, but a Securitization Audit Report. No guarantees are made regarding the efficacy of this report for a specific purpose, including any temporary or permanent averting of foreclosure; or any principal and/or payment reduction loan modifications.

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

RMC

# SECTION 1: TRANSACTION DETAILS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| David Morgensen | Patricia Morgensen |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 375 Woodland Drive<br>Scotts Valley, CA 95066 | 375 Woodland Drive<br>Scotts Valley, CA 95066 |

## TRANSACTION PARTICIPANTS

| AMOUNT | MORTGAGE SERVICER | MORTGAGE NOMINEE/BENEFICIARY |
|---|---|---|
| $770,000.00 | Central Mortgage Company d/b/a Central Mortgage Servicing Company<br>801 John Barrow Road<br>Suite 1<br>Little Rock, AR 72205<br>(501) 716-5600 | Downey Savings and Loan Association, FA |
| **ORIGINAL MORTGAGE LENDER** | **MORTGAGE TRUSTEE** | **TITLE COMPANY / ESCROW** |
| Downey Savings and Loan Association, FA<br>3501 Jamboree Road<br>Newport Beach, CA 92660<br>[1] | DSL Service Company | Old Republic Title Company<br>511 Water Street<br>Santa Cruz, CA 95060<br>(831) 421-0715<br>Downey Savings escrow<br>49041990-149 |

[1] Company operations absorbed by US Bank, NA through FDIC coordination. FDIC Announcement:
https://www.fdic.gov/bank/individual/failed/downey.html

Primary address U.S. Bancorp (NYSE: USB)
800 Nicollet Mall, Minneapolis, MN 55402 (651) 466-3000

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

# SECTION 2: SECURITIZATION
## SECURITIZATION PARTICIPANTS:

| ORIGINATOR/LENDER | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| Downey Savings and Loan Association, FA | GREENWICH CAPITAL FINANCIAL PRODUCTS, INC. [1] | GREENWICH CAPITAL ACCEPTANCE, INC. [1] |
| **ISSUING ENTITY** | **TRUSTEE** | **MASTER SERVICER/ SERVICER** |
| DSLA MORTGAGE LOAN TRUST 2005-AR3 | Deutsche Bank National Trust Company<br>1761 E St. Andrew Place<br>Santa Ana, CA 92705<br>(714) 247-6000 | DOWNEY SAVINGS AND LOAN ASSOCIATION, FA |
| **CUSTODIAN** | **CUT – OFF DATE** | **CLOSING DATE** |
| Deutsche Bank National Trust Company or any successor | May 1, 2005 | On or about May 25, 2005 |

**[1] RBS (Royal Bank of Scotland) Greenwich Capital 600 Washington Blvd., Stamford, CT 06901 (203) 897-2700**

**http://cib.rbs.com/our-locations/americas/united-states/en/offices.html**

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

PROSPECTUS SUPPLEMENT
(To Prospectus dated February 22, 2005)

**$935,750,200**
**(Approximate)**

# DSLA Mortgage Loan Trust 2005-AR3
# DSLA Mortgage Pass-Through Certificates, Series 2005-AR3

**Greenwich Capital Acceptance, Inc.**
*Depositor*

**Greenwich Capital Financial Products, Inc.**
*Seller*

**Wells Fargo Bank, N.A.**
*Master Servicer and Securities Administrator*

**Downey Savings and Loan Association, F.A.**
*Servicer*

RBS Greenwich Capital
**RBS Greenwich Capital**

May 20, 2005

http://www.sec.gov/Archives/edgar/data/826219/000104746905015641/a2158687z424b5.htm

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

## SUMMARY OF TRANSACTION AND TRANSACTION PARTIES

Summary of Terms

- **This summary highlights selected information from this document and does not contain all of the information that you need to consider in making your investment decision. To understand all of the terms of the offering of the offered certificates, read carefully this entire document and the accompanying prospectus.**

- **This summary provides an overview of certain calculations, cash flow priorities and other information to aid your understanding and is qualified by the full description of these calculations, cash flow priorities and other information in this prospectus supplement and the accompanying prospectus. Some of the information consists of forward-looking statements relating to future economic performance or projections and other financial items. Forward-looking statements are subject to a variety of risks and uncertainties that could cause actual results to differ from the projected results. Those risks and uncertainties include, among others, general economic and business conditions, regulatory initiatives and compliance with governmental regulations, and various other matters, all of which are beyond our control. Accordingly, what actually happens may be very different from what we predict in our forward-looking statements.**

- **Whenever we refer in this prospectus supplement to a percentage of some or all of the mortgage loans expected to be included as trust assets or in a loan group, that percentage has been calculated on the basis of the total principal balance of those mortgage loans as of May 1, 2005, unless we specify otherwise. We explain in this prospectus supplement under "The Mortgage Loan Groups—General" how the principal balance of a mortgage loan is calculated. Whenever we refer in this Summary of Terms or in the Risk Factors section of this prospectus supplement to the aggregate principal balance of any mortgage loans, we mean the total of their principal balances, unless we specify otherwise.**

***Offered Certificates***

On the closing date, DSLA Mortgage Loan Trust 2005-AR3 will issue eighteen classes of certificates. Only the Class 1-A, Class 2-A1A, Class 2-A1B, Class 2-A1C, Class 2-A2, Class X-1, Class X-2, Class PO, Class A-R, Class B-1, Class B-2, Class B-3 and Class B-4 Certificates are being offered by this prospectus supplement and the accompanying prospectus.

Except for the Class A-R Certificate, the offered certificates will be book-entry securities clearing through The Depository Trust Company in the U.S. or upon request through Clearstream, Luxembourg or Euroclear in Europe, in minimum denominations of $25,000, except for the Class X-1 and Class X-2 Certificates which will each be in a minimum notional amounts of $100,000 and except for the Class PO Certificates which will be offered in minimum percentage interests of 0.01%. The Class A-R Certificate will be issued as a single certificate in fully registered, certificated form.

***Additional Certificates***

In addition to the thirteen classes of offered certificates, the trust will issue five other classes of certificates. These certificates will be designated the Class B-5, Class B-6,

S-3

Class B-7, Class Y and Class C Certificates and are not being offered by this prospectus supplement and the prospectus. Information about the Class B-5, Class B-6 and Class B-7 Certificates is being included because these classes provide credit enhancement for the offered certificates. The Class B-5, Class B-6 and Class B-7 Certificates will have original aggregate principal balances of approximately $5,700,000, $5,225,000 and $3,325,203, respectively, subject to a variance as described in this prospectus supplement. The Class Y and Class C Certificates will be issued without a principal balance or notional amount.

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*See "Description of the Certificates— General," "—Book-Entry Registration and Definitive Certificates" and "The Mortgage Loan Groups" in this prospectus supplement and "The Trust Fund—The Mortgage Loans—General" in the prospectus for additional information.*

***Cut-off Date***

May 1, 2005.

***Closing Date***

On or about May 25, 2005.

***Originator***

Downey Savings and Loan Association, F.A.

*See "The Originator" in this prospectus supplement for additional information.*

***Seller***

Greenwich Capital Financial Products, Inc.

*See "The Seller" in this prospectus supplement for additional information.*

***Master Servicer***

Wells Fargo Bank, N.A.

See "The Master Servicer" in this prospectus supplement for additional information.

***Servicer***

Downey Savings and Loan Association, F.A.

*See "The Servicer" and "Servicing of Mortgage Loans" in this prospectus supplement for additional information.*

***Depositor***

Greenwich Capital Acceptance, Inc.

***Securities Administrator***

Wells Fargo Bank, N.A.

*See "The Pooling and Servicing Agreement—The Securities Administrator" in this prospectus supplement for additional information.*

***Trustee***

Deutsche Bank National Trust Company.

*See "The Pooling and Servicing Agreement—The Trustee" in this prospectus supplement for additional information.*

***Custodian***

Deutsche Bank National Trust Company.

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

***Yield Maintenance Provider***

The Bank of New York.

*See "Description of the Certificates—The Yield Maintenance Provider" in this prospectus supplement for additional information.*

***Class 2-A1B Certificate Insurer***

Ambac Assurance Corporation.

*See "The Class 2-A1B Certificate Insurer" in this prospectus supplement for additional information.*

***Mortgage Loans***

The assets of the trust will consist primarily of a pool of adjustable rate, first lien, residential mortgage loans that are divided

S-4

into two loan groups, each having the characteristics described in this prospectus supplement.

The mortgage loans will have an aggregate principal balance of approximately $950,000,403 as of the cut-off date, subject to a variance of plus or minus 10%.

http://www.sec.gov/Archives/edgar/data/826219/000104746905015641/a2158687z424b5.htm

## ASSIGNMENT OF THE MORTGAGE LOANS

***Assignment of the Mortgage Loans***

On the closing date, the depositor will transfer to the trust all of its right, title and interest in and to each of the mortgage loans, together with the related mortgage notes, mortgages and other related documents, including all scheduled payments with respect to each mortgage loan due after the cut-off date. Concurrently with the transfer, upon order of the depositor, the trustee will deliver the certificates to the depositor. Each mortgage loan transferred to the trust will be identified on the mortgage loan schedule prepared by the seller and delivered to the trustee

S-72

pursuant to the pooling and servicing agreement. The mortgage loan schedule will include the principal balance of each mortgage loan as of the cut-off date, its loan rate and certain additional information.

The pooling and servicing agreement will require that, upon certain conditions and within the time period specified in the pooling and servicing agreement, the seller will deliver to the trustee (or a custodian, as the trustee's agent for that purpose) the mortgage notes evidencing the mortgage loans endorsed in blank or to the trustee on behalf of the certificateholders, together with the other related documents received by the seller from the related originator pursuant to the terms of the related underlying purchase agreement. In lieu of delivery of an original mortgage, if an original is not available or is lost, the seller may deliver a true and complete copy of the original together with a lost note affidavit.

Within 90 days after the receipt by the trustee or its agent of the mortgage loans and related documents, the trustee will review the mortgage loans and the related documents pursuant to the pooling and servicing agreement. Pursuant to the terms of the underlying purchase agreement, if any mortgage loan or related document is found to be defective in any material respect and the defect is not cured within 90 days following notification to the originator by the trustee (or a custodian, as the trustee's agent for that purpose), the originator will be obligated to repurchase the defective

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

loan at a purchase price equal to its outstanding principal balance as of the date of purchase, plus all accrued and unpaid interest computed at the loan rate through the end of the calendar month in which the purchase is made.

The purchase price will be deposited in the distribution account on or prior to the next determination date after the originator's obligation to purchase the defective loan arises. The obligation of the originator to repurchase for a defective mortgage loan is the sole remedy available to the trustee or the certificateholders regarding any defect in that mortgage loan and the related documents.

Pursuant to the underlying purchase agreement and the reconstitution agreement, the originator has made certain representations and warranties with respect to the mortgage loans as of the date such mortgage loans were sold to the seller (the "Original Sale Date"). On the closing date the seller will represent and warrant, among other things, that:

(i) at the time of transfer, the seller has transferred or assigned all of its right, title and interest in each mortgage loan and the related documents, free of any lien,

(ii) each mortgage loan, at the time of origination, complied in all material respects with applicable local, state and federal laws, including without limitation, all applicable predatory and abusive lending laws;

(iii) none of the mortgage loans are "High Cost" as defined by the applicable predatory and abusive lending laws;

(iv) none of the group 1 mortgage loans (a) are subject to the Home Ownership and Equity Protection Act of 1994, (b) originated on or after October 1, 2002 and before March 7, 2003 are secured by properties located in the State of Georgia, (c) have proceeds that were used to finance single-premium credit insurance policies, (d) imposed a prepayment penalty term in excess of three years and (e) requires

S-73

the borrower to submit to arbitration to resolve any dispute arising out of or relating in any way to the mortgage loan transaction; and

(v) with respect to any representation and warranty made by the originator as of the Original Sale Date, to the seller's knowledge, as of the closing date, no event has occurred since the Original Sale Date that would render such representations and warranties to be untrue in any material respect.

Upon discovery of a breach of any representation or warranty that materially and adversely affects the interests of the certificateholders in a mortgage loan and the related documents, the seller or the originator, as applicable, will have a period of 90 days after discovery or notice of the breach to effect a cure. With respect to the originator, if such breach cannot be cured within the 90-day period, the originator will be obligated to repurchase such mortgage loan under the same terms and conditions as set forth above for the purchase of defective loans as a result of deficient documentation. With respect to the seller, if such breach cannot be cured within the 90-day period, the seller will be obligated to:

- substitute for the defective loan an eligible substitute mortgage loan (provided that substitution is permitted only within two years of the closing date and may not be made unless an opinion of counsel is provided to the effect that the substitution will not disqualify any REMIC created under the pooling and servicing agreement or result in a prohibited transaction tax under the Internal Revenue Code), or

- repurchase the defective loan at a purchase price equal to its outstanding principal balance as of the date of purchase, plus all accrued and unpaid interest computed at the loan rate through the end of the calendar month in which the purchase is made, plus the amount of any unreimbursed servicing-related advances, plus, in the event that the defective loan is repurchased by the seller due to a breach of the representations and warranties listed in clause (ii) or (iii) in the fourth paragraph above in this prospectus supplement, any costs and damages incurred by the trust in connection with a violation of a predatory or abusive lending law with respect to such defective loan.

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

For a mortgage loan to be eligible to be substituted for a mortgage loan (the "affected loan"), the substituted loan must meet the following criteria on the date of the substitution:

- the substituted loan has an outstanding principal balance (or in the case of a substitution of more than one mortgage loan for a single affected loan, an aggregate principal balance), not in excess of, and not more than 5% less than, the principal balance of the defective loan;

- the substituted loan has a maximum loan rate and a gross margin not less than those of the affected loan and uses the same index as the affected loan;

- the substituted loan has a remaining term to maturity not more than one year earlier and not later than the remaining term to maturity of the affected loan;

S-74

- the substituted loan complies with each representation and warranty as to the mortgage loans set forth in the pooling and servicing agreement (which are deemed to be made with respect to the substitute loan as of the date of substitution);

- the substituted loan has been underwritten by the originator in accordance with the same underwriting criteria and guidelines as the affected loan;

- the substituted loan is of the same or better credit quality as the affected loan; and

- the substituted loan satisfies certain other conditions specified in the pooling and servicing agreement.

In connection with the substitution of an eligible substitute mortgage loan, the seller will be required to deposit in the distribution account, on or prior to the next determination date after the seller's obligation to purchase or substitute the affected loan arises, a substitution adjustment amount equal to the excess of the principal balance of the affected loan over the principal balance of the eligible substitute mortgage loan.

We can make no assurance that the seller or the originator will be able to fulfill its obligation to repurchase any of the mortgage loans when such obligation may arise.

http://www.sec.gov/Archives/edgar/data/826219/000104746905015641/a2158687z424b5.htm

EMPHASIS ADDED BY EXAMINER: Depositor GREENWICH CAPITAL ACCEPTANCE, INC. is the only authorized party to transfer (or thus assign) its interest in loans to the trustee on behalf of certificate holders.

Such transfer also did NOT take place on closing date on May 1, 2005 as required by Prospectus Supplement and Pooling and Servicing Agreement.

Borrower is effectively a party to the investor agreements inasmuch as it is necessary for borrower loan to have been securitized to created trust in its configuration both at inception and currently.

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

**POOLING AND SERVICING AGREEMENT**

GREENWICH CAPITAL ACCEPTANCE, INC.,
Depositor
GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.,
Seller

WELLS FARGO BANK, N.A.,
Master Servicer and Securities Administrator
and

DEUTSCHE BANK NATIONAL TRUST COMPANY,
Trustee and Custodian

POOLING AND SERVICING AGREEMENT

Dated as of May 1, 2005

---

DSLA Mortgage Loan Trust 2005-AR3
DSLA Mortgage Pass-Through Certificates, Series 2005-AR3

http://www.sec.gov/Archives/edgar/data/1328160/000116231805000628/m259psaandexhibits.htm

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

**POOLING AND SERVICING AGREEMENT**

ARTICLE II

CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

SECTION 2.01. Conveyance of Mortgage Loans.

(a)

The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to (i) each Mortgage Loan identified on the Mortgage Loan Schedule, including the related Cut-Off Date Principal Balance, all interest due thereon after the Cut-Off Date and all collections in respect of interest and principal due after the Cut-Off Date; (ii) all the Depositor's right, title and interest in and to the Distribution Account and all amounts from time to time credited to and the proceeds of the Distribution Account; (iii) any real property that secured each such Mortgage Loan and that has been acquired by foreclosure or deed in lieu of foreclosure; (iv) the Depositor's interest in any insurance policies in respect of the Mortgage Loans; (v) all proceeds of any of the foregoing; and (vi) all other assets included or to be included in the Trust Fund. Such assignment includes all interest and principal due to the Depositor or the Master Servicer after the Cut-Off Date with respect to the Mortgage Loans. In exchange for such transfer and assignment, the Depositor shall receive the Certificates. On the Closing Date, the Depositor shall transfer the Class Y Certificate to the Seller as partial consideration for the sale of the Mortgage Loans by the Seller to the Depositor pursuant to the Mortgage Loans Purchase Agreement. In addition, on or prior to the Closing Date, the Depositor shall cause the Yield Maintenance Provider to enter into the Yield Maintenance Agreements with the Securities Administrator and on the Closing Date, the Seller shall transfer the Class Y Certificate to the Securities Administrator as inducement to enter into the Yield Maintenance Agreements. The Depositor hereby directs the Securities Administrator to execute, not in its individual capacity, but solely as Securities Administrator on behalf of the Trust, and deliver the Yield Maintenance Agreements.

Notwithstanding anything provided herein to the contrary, each of the parties hereto agrees and acknowledges that the Servicing Rights Owner is the owner of the Servicing Rights with respect to the Mortgage Loans, and that, notwithstanding the transfer, conveyance and assignment of the Mortgage Loans from the Depositor to the Trustee pursuant to this Agreement, the Servicing Rights Owner remains the sole and exclusive owner of the Servicing Rights with respect to the Mortgage Loans.

(b)

Concurrently with the execution and delivery of this Agreement, the Depositor does hereby assign to the Trustee all of its rights and interest under the Mortgage Loan Purchase Agreement, including all rights of the Seller under the Servicing Agreement to the extent assigned in the

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

Mortgage Loan Purchase Agreement. The Trustee hereby accepts such assignment, and shall be entitled to exercise all rights of the Depositor under the Mortgage Loan Purchase Agreement and all rights of the Seller under the Servicing Agreement as if, for such purpose, it were the Depositor or the Seller, as applicable, including the Seller's right to enforce remedies for breaches of representations and warranties and delivery of defective Mortgage Loan documents. The foregoing sale, transfer, assignment, set-over, deposit and conveyance does not and is not intended to result in creation or assumption by the Trustee of any obligation of the Depositor, the Seller or any other Person in connection with the Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth herein.

(c)

In connection with such transfer and assignment, the Seller, on behalf of the Depositor, does hereby deliver on the Closing Date, unless otherwise specified in this Section 2.01, to, and deposit with the Trustee, or the Custodian as its designated agent, the following documents or instruments with respect to each Mortgage Loan (a **"Mortgage File"**) so transferred and assigned:

(i)

the original Mortgage Note, endorsed either on its face or by allonge attached thereto in blank or in the following form: "Pay to the order of Deutsche Bank National Trust Company, as Trustee for DSLA Mortgage Loan Trust 2005-AR3, Mortgage Pass-Through Certificates, Series 2005-AR3, without recourse", or with respect to any lost Mortgage Note, an original Lost Note Affidavit stating that the original mortgage note was lost, misplaced or destroyed, together with a copy of the related mortgage note; provided, however, that such substitutions of Lost Note Affidavits for original Mortgage Notes may occur only with respect to Mortgage Loans the aggregate Cut-Off Date Principal Balance of which is less than or equal to 2% of the Cut-Off Date Aggregate Principal Balance;

(ii)

except as provided below, for each Mortgage Loan that is not a MERS Mortgage Loan, the original Mortgage, and in the case of each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN for that Mortgage Loan and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, or if such Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment to MERS, in each case with evidence of recording thereon, and the original recorded power of attorney, if the Mortgage was executed pursuant to a power of attorney, with evidence of recording thereon or, if such Mortgage or power of attorney has been submitted for recording but has not been returned from the applicable public recording office, has been lost or is not otherwise available, a copy of such Mortgage or power of attorney, as the case may be, together with an Officer's Certificate of the Seller certifying that the copy of such Mortgage delivered to the Trustee (or its Custodian) is a true copy and that the original of such Mortgage has been forwarded to the public recording office, or, in the case of a Mortgage that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and a written Opinion of Counsel (delivered at the Seller's expense) acceptable to the Trustee and the Depositor that an original recorded Mortgage is not required to enforce the Trustee's interest in the Mortgage Loan;

(iii)

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

the original of each assumption, modification or substitution agreement, if any, relating to the Mortgage Loans, or, as to any assumption, modification or substitution agreement which cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such assumption, modification or substitution agreement has been delivered for recordation, a photocopy of such assumption, modification or substitution agreement, pending delivery of the original thereof, together with an officer's certificate of the Seller, title company, escrow agent or closing attorney certifying that the copy of such assumption, modification or substitution agreement delivered to the Trustee (or its Custodian) on behalf of the Trust is a true copy and that the original of such agreement has been forwarded to the public recording office;

(iv)

in the case of each Mortgage Loan that is not a MERS Mortgage Loan, an original Assignment of Mortgage, in form and substance acceptable for recording. The Mortgage shall be assigned to "Deutsche Bank National Trust Company, as Trustee for DSLA Mortgage Loan Trust 2005-AR3, Mortgage Pass-Through Certificates, Series 2005-AR3, without recourse;"

(v)

in the case of each Mortgage Loan that is not a MERS Mortgage Loan, an original copy of any intervening Assignment of Mortgage showing a complete chain of assignments, or, in the case of an intervening Assignment of Mortgage that has been lost, a written Opinion of Counsel (delivered at the Seller's expense) acceptable to the Trustee that such original intervening Assignment of Mortgage is not required to enforce the Trustee's interest in the Mortgage Loans;

(vi)

the original Primary Insurance Policy, if any, or certificate, if any;

(vii)

the original or a certified copy of lender's title insurance policy.

(d)

Assignments of each Mortgage with respect to each Mortgage Loan that is not a MERS Mortgage Loan shall be recorded; provided, however, that such assignments need not be recorded if, in the Opinion of Counsel (which must be from Independent Counsel and not at the expense of the Trust or the Trustee) acceptable to the Trustee, the Rating Agency and the Master Servicer, recording in such states is not required to protect the Trustee's interest in the related Mortgage Loans; provided, further, notwithstanding the delivery of any Opinion of Counsel, each assignment of Mortgage shall be submitted for recording by the Seller (or the Seller will cause the Servicer to submit each such assignment for recording), at the cost and expense of the Seller, in the manner described above, at no expense to the Trust or Trustee, upon the earliest to occur of (1) reasonable direction by the Majority Certificateholders, (2) the occurrence of a bankruptcy or insolvency relating to the Seller or the Depositor, or (3) with respect to any one Assignment of Mortgage, the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage. Subject to the preceding sentence, as soon as practicable after the Closing Date (but in no event more than three months thereafter except to the extent delays are caused by the applicable recording office), and to the extent recordation is required under the laws of the applicable jurisdiction to protect the Trustee's and the Certificateholders' interest in the related Mortgage Loan, the Seller shall properly record (or the Seller will cause the Servicer to properly record), at the expense

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

of the Seller (with the cooperation of the Depositor, the Master Servicer and the Trustee), in each public recording office where the related Mortgages are recorded, each assignment with respect to a Mortgage Loan that is not a MERS Mortgage Loan.

(e)

The Trustee agrees to execute and deliver to the Depositor on or prior to the Closing Date an acknowledgment of receipt of the original Mortgage Note (with any exceptions noted), substantially in the form attached as Exhibit G-1 hereto.

(f)

If the original lender's title insurance policy, or a certified copy thereof, was not delivered pursuant to Section 2.01(x) above, the Seller shall deliver or cause to be delivered to the Trustee the original or a copy of a written commitment or interim binder or preliminary report of title issued by the title insurance or escrow company, with the original or a certified copy thereof to be delivered to the Trustee, promptly upon receipt thereof, but in any case within 175 days of the Closing Date. The Seller shall deliver or cause to be delivered to the Custodian, acting on behalf of the Trustee, promptly upon receipt thereof, any other documents constituting a part of a Mortgage File received with respect to any Mortgage Loan sold to the Depositor by the Seller, including, but not limited to, any original documents evidencing an assumption or modification of any Mortgage Loan.

(g)

For Mortgage Loans (if any) that have been prepaid in full after the Cut-off Date and prior to the Closing Date, in lieu of the Seller delivering the above documents, the Master Servicer shall deliver to the Custodian on behalf of the Trustee, prior to the first Distribution Date, an Officer's Certificate, based on information provided to the Master Servicer from the Servicer, which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Distribution Account have been so deposited. All original documents that are not delivered to the Custodian on behalf of the Trust shall be held by the Servicer in trust for the Trustee, for the benefit of the Trust and the Certificateholders.

(h)

The Depositor herewith delivers to the Trustee an executed copy of the Mortgage Loan Purchase Agreement.

SECTION 2.02. Acceptance by Trustee.

The Trustee, by execution and delivery hereof, acknowledges receipt by it or by the Custodian on its behalf of the Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule, subject to review thereof by the Custodian on behalf of the Trustee and declares that it holds or will hold all other assets included in the definition of "Trust Fund" in trust for the exclusive use and benefit of all present and future Certificateholders.

The Trustee further agrees, for the benefit of the Certificateholders, to review each Mortgage File delivered to it and to certify and deliver to the Depositor, the Seller and the Rating Agency an interim certification in substantially the form attached hereto as Exhibit G-2, within 90 days after the Closing Date (or, with respect to any document delivered after the Startup Day, within 45 days of receipt and with respect to any Qualified Substitute Mortgage, within five Business Days after

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

the assignment thereof) that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan specifically identified in the exception report annexed thereto as not being covered by such certification), (i) all documents required to be delivered to it pursuant to Section 2.01 of this Agreement are in its possession, (ii) such documents have been reviewed by it and have not been mutilated, damaged or torn and relate to such Mortgage Loan and (iii) based on its examination and only as to the foregoing, the information set forth in the Mortgage Loan Schedule that corresponds to items (i), (ii) and (iii) of the Mortgage Loan Schedule accurately reflects information set forth in the Mortgage File. It is herein acknowledged that, in conducting such review, the Trustee is under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that they are genuine, enforceable, or appropriate for the represented purpose or that they have actually been recorded or that they are other than what they purport to be on their face.

No later than 180 days after the Closing Date, the Trustee shall deliver to the Depositor and the Seller a final certification in the form annexed hereto as Exhibit G-3 evidencing the completeness of the Mortgage Files, with any applicable exceptions noted thereon.

Upon the discovery by the Seller or the Depositor (or upon receipt by the Trustee of written notification of such breach) of a breach of any of the representations and warranties made by the Seller in the Mortgage Loan Purchase Agreement in respect of any Mortgage Loan that materially adversely affects such Mortgage Loan or the interests of the related Certificateholders in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties to this Agreement.

The Depositor and the Trustee intend that the assignment and transfer herein contemplated constitute a sale of the Mortgage Loans, the related Mortgage Notes and the related documents, conveying good title thereto free and clear of any liens and encumbrances, from the Depositor to the Trustee and that such property not be part of the Depositor's estate or property of the Depositor in the event of any insolvency by the Depositor. In the event that such conveyance is deemed to be, or to be made as security for, a loan, the parties intend that the Depositor shall be deemed to have granted and does hereby grant to the Trustee a first priority perfected security interest in all of the Depositor's right, title and interest in and to the Mortgage Loans, the related Mortgage Notes and the related documents, and that this Agreement shall constitute a security agreement under applicable law.

http://www.sec.gov/Archives/edgar/data/1328160/000116231805000628/m259psaandexhibits.htm

EMPHASIS ADDED BY EXAMINER: Examiner recommends discovery of all such documents that Depositor GREENWICH CAPITAL ACCEPTANCE, INC. was to have delivered to Trustee Deutsche Bank National Trust Company on closing date as specified above; the un-redacted index of files received during that period; and then-effective records retention policies of each company indexed to Federal and state codes for various types of records.

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

**Governing Law:**

SECTION 12.04. Governing Law; Jurisdiction.

This Agreement shall be construed in accordance with the laws of the State of New York, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

**http://www.sec.gov/Archives/edgar/data/1328160/000116231805000628/m259psaandexhibits.htm**

**New York State Trust Law Statutes state:**

Unless an asset is transferred into a lifetime trust, the asset does not become trust property. (NY Estates, Powers and Trust Law § 7-1.18).

A trustee's act that is contrary to the trust agreement is void. (NY Estates, Powers and Trust Law § 7-2.4)

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

RMC

# SECTION 3: FORECLOSURE

**Recorded Events on the Loan Including Foreclosure Issues and Securitization**

| Recorded Chain of Mortgage Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original Mortgage** | **Date** | **Note Holder** |
| March 21, 2005<br>Instrument #<br>2005-18568<br>Official Records,<br>Santa Cruz County<br>California | David and Patricia Morgensen<br>(Borrower)<br><br>Downey Savings and Loan Association, FA<br>(Lender)<br><br>**MIN # 1002026-9041495243-4** | March 15, 2005 | Downey Savings and Loan Association, FA<br><br>( Lender)<br>Principal Amount:<br>$770,000.00<br><br>**LOAN # 9041495243** |
| January 9, 2006<br>Instrument #<br>2006-1288<br>Official Records,<br>Santa Cruz County<br>California | **Assignment of Deed of Trust**<br>to MERS<br>1)Document signer Crystal Moore stated she was Vice President of Downey Savings without disclosure of Nationwide Title Clearing employment<br>2) No Assignment was made by Depositor to the DSLA Mortgage Loan Trust by the trust cut-off date May 1, 2005 | May 1, 2005 | DSLA MORTGAGE LOAN TRUST 2005-AR3<br>Lender<br>Principal Amount:<br>$770,000.00 |
| February 1, 2008 and April 10, 2008<br>Instrument #<br>2008-4109 and 2008-15255<br>Official Records,<br>Santa Cruz County<br>California | **Notice of Default and Substitution of Trustee**<br>*Notice of Default rescinded 9/30/10* | | |
| September 28, 2010<br>Instrument #<br>2010-39036<br>Official Records,<br>Santa Cruz County<br>California | **Notice of Default** | | |
| July 13, 2011<br>Instrument #<br>2011-27909<br>Official Records,<br>Santa Cruz County<br>California | **Assignment of Deed of Trust to Central Mortgage Company.**<br>Document signed by Lou Ann Howard as Assistant Secretary of MERS without disclosure of Assignee employment | | |
| July 13, 2011<br>Instrument #<br>2011-27910<br>Official Records,<br>Santa Cruz County<br>California | **Notice of Trustee Sale** | | |
| April 23, 2013<br>Instrument #<br>2013-20036<br>Official Records,<br>Santa Cruz County<br>California | **Notice of Default** | | |

***Includes bank-initiated recordings related to primary loan. Annotated voluntary lien search shown at end of report as Exhibit I.***

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

# REPORT SUMMARY

**Deed of Trust:**

- On March 15, 2005, Debtors David and Patricia Morgensen executed a negotiable promissory note and a security interest in the form of a DEED OF TRUST in the amount of $ 770,000.00. This document was filed as document number 2005-18568 in the Official Records of Santa Cruz County. ***The original lender of the promissory note is Downey Savings and Loan Association, FA. Mortgage Electronic Registration Systems, Inc. was not listed on the Deed of Trust.***

**Securitization (The Note):**

- The NOTE was reported sold, transferred, assigned and securitized as a tracking asset into the DSLA MORTGAGE LOAN TRUST 2005-AR3 with a Closing Date of May 25, 2005. No evidence of recording of Assignment by Depositor GREENWICH CAPITAL ACCEPTANCE, INC. was made by cut-off date along with previous intervening parties that could have otherwise perfected the security interest in the Note.

**Assignment of Deed of Trust:**

- On January 9, 2006, an Assignment of Deed of Trust was recorded in the Official Records, Santa Cruz County as instrument number 2006-1288 to Mortgage Electronic Registration Systems, Inc. This document was marked (not even initialed) by Crystal Moore as Vice President for Downey Savings and Loan Association, FA. WITHOUT DISCLOSURE OF NATIONWIDE TITLE CLEARING EMPLOYMENT and notarized in Pinellas County, FL.
- The only party that can assign loans to the trust is GREENWICH CAPITAL ACCEPTANCE, INC. per trust filings with the Securities and Exchange Commission as noted above. No such Assignment took place by the closing date.
- No evidence of a negotiated transfer was presented by Mr. Moore while stating exchange was "for good and valuable consideration" for this $770,000 security interest. Examiner recommends prior to acceptance of such statements that supporting unfalsified accounting documentation be accessed and reviewed (e.g. verifiable proof of funds agreed to then reconciled bank statements; purchase/sale agreement; accounting journal entries) among all intervening parties as specified in investor Prospectus Supplement and Pooling and Servicing Agreement.

**Notice of Default and Substitution of Trustee:**

- A Notice of Default and Substitution of Trustee were recorded on May 21, 2008 and Jun 2, 2008, in the Official Records, Santa Cruz County as instrument numbers 2008-4109 and 2008-15255, respectively.
- *Notice of Default rescinded September 30, 2010.*

**Notice of Default:**

- A Notice of Default was recorded on September 28, 2010, in the Official Records, Santa Cruz County as instrument number 2010-39036.

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

**Assignment of Deed of Trust:**

- An Assignment of Deed of Trust was recorded on July 13, 2011 in the Official Records, Santa Cruz County as instrument number 2011-27909.
- Document dependent upon invalid Assignment of Deed of Trust to MERS January 9, 2006
- Lou Ann Howard states she signs for Mortgage Electronic Registration Systems, Inc. without disclosure to employment by Assignee Central Mortgage Company.
- She gives no indication of securitization of loan to DSLA 2005-AR3.

**Notice of Trustee Sale:**

- Between July 13, 2011, a Notice of Trustee Sale was recorded in the Official Records, Santa Cruz County as instrument 2011-27901.
- Documents are dependent upon the invalid Assignments of Deed of Trust above and therefore are also invalid.

**Notice of Default:**

- Between April 23, 2013, a Notice of Default was recorded in the Official Records, Santa Cruz County as instrument 2013-20036.
- Documents are dependent upon the invalid Assignments of Deed of Trust above and therefore are also invalid.

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

## ASSIGNMENT OF DEED OF TRUST 1/9/06

**On this document, Crystal Moore of Nationwide Title Clearing states she is Vice President of Downey Savings and Loan based in Newport Beach, CA. She transfers lien to MERS, a company described as an AGENT by the Dept. of Treasury, Federal Reserve, FHFA, FDIC and OCC. No evidence presented that "good and valuable consideration" given by MERS. SHE ALSO STATES MERS IS NOMINEE FOR CENTRAL MORTGAGE COMPANY NEITHER OF WHICH ARE SHOWN ON DEED OF TRUST.**

2006-0001288

Recorded Official Records County of Santa Cruz GARY E. HAZELTON Recorder | REC FEE 9.00
08:20AM 09-Jan-2006 | JEB Page 1 of 1

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

DSL#: 9041495243
Effective Date: 12/01/2005

CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, DOWNEY SAVINGS & LOAN ASSOCIATION, F.A. , A CALIFORNIA CORPORATION, WHOSE ADDRESS IS 3501 JAMBOREE RD. 3RD FLOOR N. TOWER, NEWPORT BEACH, CA 92660, ASSIGNOR, by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ,A DELAWARE CORPORATION, ITS SUCCESSORS OR ASSIGNS, AS NOMINEE FOR CENTRAL MORTGAGE COMPANY, AN ARKANSAS CORPORATION, C/O P.O. BOX 2026, FLINT, MI 48501-2026, (ASSIGNEE),
Said Deed made by DAVID MORGENSEN AND PATRICIA MORGENSEN and recorded on 03/21/2005 as Inst# 2005-0018568 in Book Page in the office of the SANTA CRUZ County Recorder, CA.

Dated: 12/13/2005
DOWNEY SAVINGS & LOAN ASSOCIATION, F.A.

By:____________________
CRYSTAL MOORE VICE PRESIDENT

Document merely marked and not initialled or signed, which is an indication of incapacity. She states her address at Newort Beach, CA.

She states effective date as 12/1/05, which is the cut-off for the DSLA 2005-AR3 Trust. But she has concealed the securitization of loan to that trust, preferring to hide this fact by the use of the MERS mechanism.

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

# The Most Shocking Statements From Alleged Foreclosure 'Robo-Signers' (VIDEO)

The Huffington Post | By William Alden and Ryan McCarthy

Posted: 11/13/2010 9:22 am EST | Updated: 05/25/2011 6:10 pm EDT

In more than two hours of video footage recently uploaded to YouTube, three alleged "robo signers" describe how they approved thousands of mortgage documents a day without reading them.

Robo-signing is the latest ugly turn in the ongoing mortgage mess. Banks and loan servicers appear to have illegally processed countless documents in the rush to foreclose. The scandal has spawned a host a host of lawsuits, including a Federal racketeering lawsuit brought against Bank of America and a wave of investigations by 50 state attorneys general.

The three employees of Nationwide Title Clearing -- notary Crystal Moore, "signer in charge" Bryan Bly and witness Dhurata Doko -- gave depositions to lawyer Christopher Forrest, reports the St. Petersburg Times. Their testimony presents a detailed and often shocking portrait of the assembly-line like process for approving documents.

The employees admit they didn't read the thousands of documents they signed daily, and they betray ignorance of key aspects of the mortgage industry. In some cases, according to the testimony, their signatures were affixed to documents without their knowledge.

One employee admits he doesn't know how many companies he had signed for as a vice president. Another suggests she doesn't know anything at all about the mortgage industry. And the third says she didn't know exactly what she was authorized to do on behalf of her employer -- her job was, simply, to "sign the documents."

http://www.huffingtonpost.com/2010/11/13/foreclosure-robo-signers-statements_n_783031.html?

Downey Savings "Vice President" Crystal Moore

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

Temporary Injunction to suppress video deposition of Crystal Moore and other employees brought by Nationwide Title Clearing attorneys

**IN THE CIRCUIT COURT, TWELFTH JUDICIAL CIRCUIT, IN AND FOR SARASOTA COUNTY, FLORIDA**

**CASE NO.: 2009 CA 007211**

**DEUTSCHE BANK NATIONAL TRUST COMPANY, *et al.*,**

Plaintiffs,

vs.

**PETER Y. MORLON, *et al.*,**

Defendants.
_______________________________________/

**NON-PARTY WITNESSES CITI RESIDENTIAL LENDING, INC., NATIONWIDE TITLE CLEARING, BRYAN BLY, CRYSTAL MOORE, DHURATA DOKO AND VILMA CASTRO'S EMERGENCY MOTION FOR TEMPORARY INJUNCTION**

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

*RMC*

II. BACKGROUND

Ms. Moore, Mr. Bly, Ms. Castro[1] and Ms. Doko (the **NTC Employees**) are employees of

[1] Vilma Castro has not submitted an affidavit to this motion, but testified she is an employee of NTC.

10/2010 FRI 12:27 FAX 727 893 8824 St. Petersburg Times 002

Nationwide Title Clearing. (Bly Aff. ¶ 1[2]; Moore Aff. ¶ 1[3]; Doko Aff. ¶ 1[4]). The video depositions of Ms. Moore, Mr. Bly, Ms. Castro and Ms. Doko took place on Thursday, November 4, 2010, pursuant to this Court's order. The NTC Employees stated they would read their transcripts, but did not receive copies of either their transcripts or their video depositions before the events described below.

On Saturday, November 6, 2010, The Forrest Law Firm created a YouTube "channel" and then began uploading video segments of the NTC Employee's depositions to YouTube. *See* ... On November 9, 2010, Mr. Forrest filed a

http://www.tampabay.com/specials/2010/PDFs/NationwideLibel121010/7%20893%208824_101210_338695577.pdf

Examiner recommends that Ms. Moore be deposed regarding her first-hand knowledge of the subject Assignment.

"X" as a signature refers to a cross that is printed in lieu of an individual's signature. A signature is required to authenticate wills, deeds, and certain commercial instruments. Typically, individuals sign their full names when executing legal documents. Sometimes, however,individuals use only their initials or other identifying mark. For illiterate, incompetent, or disabled people, this mark is often the letter X.Documents signed with an X sometimes raise questions as to their validity and enforceability.

http://legal-dictionary.thefreedictionary.com/%22X%22+as+a+Signature

REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015
-All Rights Reserved-

Ms. Moore made a loop and not a full signature. Signing perhaps thousands a documents daily without verification is equivalent to signing without capacity.

Crystal Moore, Florida Notary, still active

It is questionable, however, that one can notarize documents when they are unable to adequately sign documents

Accessed 3/26/15

## Commission Detail

**Notary ID:** 1268678
**Last Name:** Moore
**First Name:** Crystal
**Middle Name:**
**Birth Date:** 7/21/XX
**Transaction Type:** NEW
**Certificate:** DD 927242
**Status:** EXP
**Issue Date:** 09/24/09
**Expire Date:** 09/23/13
**Bonding Agency:** National Notary Association - Florida
**Mailing Address:** Palm Harbor, FL 34684

http://notaries.dos.state.fl.us/notidsearch.asp?id=1268678

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

*RMC*

## ASSIGNMENT RECORDED 7/13/11

Document signed by Lou Ann Howard as Assistant Secretary of MERS "for value received." Ms. Howard relies upon invalid Assignment by Nationwide Title Clearing employee Crystal Moore to MERS. Lou Ann Howard is NOT a MERS employee, but employed by Assignee Central Mortgage Company. No mention is made of DSLA 2005-AR3 Trust, thus concealing securitization from borrower.

2011-0027909 Page 1 of 3

2011-0027909 07/13/2011 08:42:41 AM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $24.00
COUNTY TAX: $0.00
CITY TAX: $0.00
ADTR
3 PGS
RCD157

[RECORDING REQUESTED BY
Fidelity National Title Insurance Company
c/o Trustee Corps

AND WHEN RECORDED MAIL TO:]

CENTRAL MORTGAGE COMPANY
801 John Barrow Road,
Suite 1
Little Rock, AR 72205

[Space above this line for recorder's use only]

Trustee Sale No. CA0816582 Loan No. 9041495243 Title Order No. H800800
MERS # 100202690414952434 PHONE(888) 679-6377

# ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to CENTRAL MORTGAGE COMPANY D/B/A CENTRAL MORTGAGE LOAN SERVICING COMPANY all beneficial interest under that certain Deed of Trust dated 03/16/2005, executed by DAVID MORGENSEN AND PATRICIA MORGENSEN, HUSBAND AND WIFE, as Trustor; to DSL SERVICE COMPANY, A CALIFORNIA CORPORATION, as Trustee; and Recorded on 03/21/2005 as Document No. 2005-0018568 of official records in the Office of the County Recorder of Santa Cruz County, California., real property described as follows:

REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015
-All Rights Reserved-

*RMC*

PARCEL I:
BEING A PORTION OF LOTS 4 AND 5, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "RECORD OF SURVEY MAP OF LANDS IN THE S.W. 1/4 OF SECTION 33, T. 9 S. R. 1 W., M.D.B. & M., SANTA CRUZ COUNTY, CALIFORNIA", FILED FOR RECORD JUNE 27, 1955 IN VOLUME 33 OF MAPS, PAGE 29, SANTA CRUZ COUNTY RECORDS AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING IN THE MIDDLE OF A RIGHT OF WAY 40 FEET IN WIDTH AS SHOWN ON THE ABOVE ENTITLED MAP OF THE MOST SOUTHERN CORNER OF THE LANDS CONTAINED IN THE DEED FROM JOE FERIOLI, ET UX, TO ROBERT E. CONWAY, ET UX, RECORDED JULY 15, 1960, IN VOLUME 1330, PAGE 599, OFFICIAL RECORDS OF SANTA CRUZ COUNTY; RUNNING THENCE FROM SAID POINT OF BEGINNING, LEAVING SAID RIGHT OF WAY AND ALONG THE SOUTHERN BOUNDARY OF SAID LANDS OF CONWAY AND ALONG THE LANDS CONTAINED IN THE DEED TO ROBERT CONWAY, ET UX., BY DEED RECORDED JUNE 1, 1959, IN VOLUME 1249, PAGE 445, OFFICIAL RECORDS OF SANTA CRUZ COUNTY, NORTH 63° 24' 20" EAST 210.99 FEET TO THE SOUTHEASTERN CORNER OF THE LAST MENTIONED LANDS OF CONWAY; THENCE ALONG THE SOUTHERLY PROLONGATION OF THE EASTERN LINE OF THE LAST MENTIONED LANDS OF CONWAY SOUTH 0° 43' WEST 273.01 FEET TO THE NORTHEASTERN CORNER OF THE LANDS CONTAINED IN THE DEED TO RICHARD D. REMICK, ET UX., RECORDED JULY 1, 1960, IN VOLUME 1328, PAGE 149, OFFICIAL RECORDS OF SANTA CRUZ COUNTY; THENCE ALONG THE NORTHERN LINE OF SAID LANDS OF REMICK, NORTH 70° 23' 10" WEST 150.00 FEET TO AN ANGLE; THENCE NORTH 12° 10' 50" WEST 53.30 FEET TO THE CENTERLINE OF SAID FIRST MENTIONED 40 FOOT RIGHT OF WAY; THENCE LEAVING THE LANDS OF REMICK AND ALONG THE CENTERLINE OF SAID 40 FOOT RIGHT OF WAY NORTH 4° 11' 30" EAST 37.52 FEET TO AN ANGLE AND THENCE NORTH 59° 32' 30" WEST 35.00 FEET TO THE PLACE OF BEGINNING.

PARCEL II:

BEING A PART OF LOT 5, AS SHOWN ON THE MAP ENTITLED, "RECORD OF SURVEY MAP OF LANDS IN THE S.W. 1/4 OF SECTION 33 T. 9 S. R. 1 W., M.D.B. & M., SANTA CRUZ COUNTY, CALIFORNIA",

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

**FILED FOR RECORD JUNE 27, 1955, IN VOLUME 23 OF MAPS, PAGE 29, SANTA CRUZ COUNTY RECORDS AND FURTHER DESCRIBED AS FOLLOWS: BEGINNING ON THE EAST LINE OF SAID LOT 5, AT A STATION FROM WHICH THE SOUTHEAST CORNER OF SAID LOT 5 BEARS SOUTH 0° 43' WEST 40.0 FEET DISTANT; THENCE ALONG THE EAST LINE OF SAID LOT 5, NORTH 0° 43' EAST 10 FEET, MORE OR LESS, TO THE POINT OF INTERSECTION THEREOF WITH A LINE PARALLEL AND DISTANT 10 FEET AT RIGHT ANGLES FROM THE SOUTHEASTERLY LINE AND THE NORTHEASTERLY PROLONGATION OF THE SOUTHEASTERLY LINE OF THAT CERTAIN PARCEL OF LAND DESCRIBED IN THE DEED TO STEVEN B. DUDLEY, ET UX., RECORDED JANUARY 19, 1966, IN VOLUME 1741, PAGE 129, OFFICIAL RECORDS OF SANTA CRUZ COUNTY; THENCE SOUTHWESTERLY ALONG SAID PARALLEL LINE TO THE POINT OF INTERSECTION THEREOF WITH THE SOUTHWESTERLY LINE OF SAID PARCEL; THENCE SOUTH 26° 28' 35" EAST ALONG SAID SOUTHWESTERLY LINE 10 FEET, MORE OR LESS, TO THE MOST SOUTHERLY CORNER OF SAID PARCEL; THENCE NORTH 65° 27' EAST ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL TO THE POINT OF BEGINNING.**

**PARCEL III:**

**BEING A PART OF SECTION 33, TOWNSHIP 9 SOUTH, RANGE 1 WEST, M.D.B. & M., AND BEING ALSO A PART OF THE LANDS CONVEYED TO RICHARD D. REMICK, ET UX., BY DEED RECORDED SEPTEMBER 10, 1959, IN VOLUME 1270, OF OFFICIAL RECORDS, AT PAGE 185, SANTA CRUZ COUNTY RECORDS, AND FURTHER BOUNDED AND DESCRIBED AS FOLLOWS:**

**BEGINNING AT THE 1/16TH SECTION LINE EAST AND WEST THROUGH THE SOUTHWEST QUARTER OF SAID SECTION 33, AT A STATION FROM WHICH THE NORTHEAST CORNER OF LANDS CONVEYED TO CHET MANTOR, ET UX.., BY DEED RECORDED AUGUST 10, 1960, IN VOLUME 1335, OF OFFICIAL RECORDS, AT PAGE 402, SANTA CRUZ COUNTY RECORDS, BEARS NORTH 89° 59' WEST 105.7 FEET DISTANT; THENCE SOUTH 0° 43' WEST 32.2 FEET; THENCE SOUTHWESTERLY 117 FEET, MORE OR LESS, TO THE SOUTHEAST CORNER OF SAID LANDS CONVEYED TO MANTOR, THENCE ALONG THE EAST BOUNDARY OF LANDS SHOWN ON RECORD OF SURVEY MAP FILED IN VOLUME 33 OF MAPS, AT PAGE 29, SANTA CRUZ COUNTY RECORDS,**
**SOUTH 0° 43' WEST 572.34 FEET TO THE SOUTHEAST CORNER OF THE LANDS CONVEYED TO ROBERT CONWAY, ET UX., BY DEED RECORDED JUNE 1, 1959, IN VOLUME 1249, OF OFFICIAL RECORDS, AT PAGE 445, SANTA CRUZ COUNTY RECORDS, THENCE SOUTH 89° 59' EAST 163.7 FEET TO THE EAST BOUNDARY OF SAID LAND OF REMICK; THENCE ALONG SAID EAST BOUNDARY, NORTH 0° 43' EAST 661.34 FEET TO THE NORTHEAST CORNER THEREOF, ON SAID 1/16 SECTION LINE; THENCE NORTH 89° 59' WEST 60 FEET TO THE PLACE OF BEGINNING.**

**EXCEPTING THEREFROM SO MUCH OF THE HEREIN DESCRIBED LAND AS CONVEYED TO JAMES M. LAWSON, ET UX., BY DEED RECORDED JANUARY 30, 1968, IN VOLUME 1862, OF OFFICIAL RECORDS, AT PAGE 281. ALSO EXCEPTING THEREFROM SO MUCH OF THE HEREIN DESCRIBED LAND AS CONVEYED TO DION L. JOHNSON, ET UX., BY DEED RECORDED APRIL 18, 1969 IN VOLUME 1945, OF OFFICIAL RECORDS, AT PAGE 215.**

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust including the nght to have reconveyed, in whole or in part, the real property described therein.

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

Trustee Sale No. CA08 ~~tc~~582
Loan No. 9041495243
Title Order No. H800800

Dated: 03/25/08

Beneficiary:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: Lou Ann Howard, Assistant Secretary

STATE OF Arkansas
COUNTY OF Saline

On March 25, 2008 before me, Teresa A. Taber, a notary public, personally appeared Lou Ann Howard who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arkansas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public in and for said County and State

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

Lou Ann Howard states her former employment by Central Mortgage Company May 1999 - March 2012. Subject Assignment dated 3/25/08 and recorded 7/13/11.

She mentions no employment by or involvement in any capacity with MERS. Examiner recommends deposition, including production and review of company or industry training materials whereby she could be misled into believing signing as an Assignor representative when working for an Assignee is righteous activity.

https://www.linkedin.com/pub/lou-ann-howard/1/7ab/475

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

American Banker states that foreclosure ownership support documents (the primary example in the State of California being Assignments of Deed of Trust) should be prepared at time of transfer instead of by bank employees claiming to represent lenders that no longer exist:

AMERICAN BANKER | Consumer Finance

Today's Paper | Magazine | iPad | Video

Women in Banking | FinTech 100

MERGERS & ACQUISITIONS | REGULATION & REFORM | COMMUNITY BANKING | CONSUMER FINANCE | BANK TECHNOLOGY | BANKTHINK | SPECIA REPOR

Foreclosure Documents

by Kate Berry
AUG 31, 2011 5:47pm ET

Print Email Reprints

(15) Comments

Tweet 66 Share 21 Like 76 +1

Some of the largest mortgage servicers are still fabricating documents that should have been signed years ago and submitting them as evidence to foreclose on homeowners.

The practice continues nearly a year after the companies were caught cutting corners in the robo-signing scandal and about six months after the industry began negotiating a settlement with state attorneys general investigating loan-servicing abuses.

Several dozen documents reviewed by *American Banker* show that as recently as August some of the largest U.S. banks, including Bank of America Corp., Wells Fargo & Co., Ally Financial Inc., and OneWest Financial Inc., were essentially backdating paperwork necessary to support their right to foreclose.

Some of documents reviewed by *American Banker* included signatures by current bank employees claiming to represent lenders that no longer exist.

RELATED LINKS

U.S. Bank Stands Out as a Mortgage Bond Trustee with Teeth

Robo-Signing Settlement Needs to Go All the Way

Are the State AG Mortgage Settlement Talks Falling Apart?

N.Y. AG Moves to Intervene in B of A-Bondholder Settlement

RELATED GRAPHIC

Enlarge This Image

Robo-Signing Revealed

http://www.americanbanker.com/issues/176_170/robo-signing-foreclosure-mortgage-assignments-1041741-1.html

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

## LOAN SEARCH

The loan was found in the DSLA MORTGAGE LOAN TRUST 2005-AR3 as investor loan number 9041495243, which agrees with the loan number on the Deed of Trust and the relevant characteristics of the loan. The loan is shown in foreclosure proceedings 'F' status. Loan is still actively trading in the trust. A loan modification has been made for the loan, but without principal forgiveness, unlike a similar principal amount loans in the trust.

Collateral Menu | DSLA 2005-AR3 2A1A Mtge | LLD | Message

<HELP> for explanation.

DSLA 2005-AR3 2A1A Mtge | 92) Export | 93) Quick Views | Loan Level Details

95) All Collateral As of 02/15

| | Count | Current Balance | Deal % | WALTV | Score | Original Balance | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
| All Loans in Group | 2814 | 135,092,565.65 | 100.00% | 72.1 | 707 | 951,651,447.00 | 3.45 | 298 | 117 |
| Balance >0 | 384 | 135,092,565.65 | 100.00% | 72.1 | 707 | 137,461,133.00 | 3.45 | 298 | 117 |

Jump to Column | 96) Clear Filters | Zoom 100%

| Loan ID | PayHistory | Balance | Original Balance | Groups | Mod Type |
|---|---|---|---|---|---|
| | | >0 | | | |
| | | 135,092,565.65 | 137,461,133.00 | | |
| 105) 9041495243 | FFFFFFFFFFFFFFFBBBBBMBBBB | 850,845.30 | 770,000.00 | 2 | Rate Modification, Recapitalization |
| 106) 9041599002 | CCCCCCCCCCCCCCCCCCCCCCCCC | 718,952.74 | 768,000.00 | 2 | |
| 107) 9041460049 | CCCCCCCCCCCCCCCBCCCCCCBBB | 839,793.74 | 735,000.00 | 2 | Rate Modification |
| 108) 9041442617 | CCCCCM9999963CCCC3CCCCCCC | 813,453.29 | 717,500.00 | 2 | Rate Modification, Recapitalization, ARM->Fix |
| 109) 9041549924 | CCCCCCCCCCCCM999999663CC | 913,296.14 | 699,500.00 | 2 | Rate Modification, Recapitalization, ARM->Fix |
| 110) 9032781866 | CCCCCCCCCCCCCCCCCCCCCCCCC | 621,010.26 | 686,400.00 | 2 | |
| 111) 9041494220 | CCCCCCCCCCCCCCCCCCCCCCCCC | 658,454.40 | 670,000.00 | 2 | |
| 112) 9041571696 | CCCCCCCCCCCCCCCCCCCCCCCCC | 666,851.05 | 670,000.00 | 2 | |
| 113) 9041465428 | CCCCCCCCCCCCCCCCCCCCCCCCC | 860,356.20 | 658,000.00 | 2 | Rate Modification, Recapitalization, ARM->Fix |
| 114) 9041530148 | CCCC3CCC6333633CCCCCCCC33 | 555,248.92 | 652,000.00 | 2 | |
| 115) 9041433053 | CCCCCCCCCCCCCCCCCCCCCCCCC | 646,473.98 | 650,000.00 | 2 | Rate Modification, Recapitalization, ARM->Fix |
| 116) 9041546862 | CCCCCCCCCMCCCCCCCCCCCCCCC | 661,619.75 | 650,000.00 | 2 | Rate Modification, ARM->Fixed |
| 117) 9041585712 | CCCCCMFFFFFBBBFF999999999 | 806,397.13 | 650,000.00 | 2 | Rate Modification, Recapitalization, ARM->Fix |
| 118) 9041565615 | CCCCCCCCCCCCCCCCCCCCCCCCC | 507,722.75 | 645,000.00 | 2 | Rate Modification, ARM->Fixed |
| 119) 9041348889 | CCCCCCCCCCCCCCCCCCCCCCCCC | 666,158.66 | 626,000.00 | 2 | Rate Modification, Recapitalization, ARM->Fix |
| 120) 9041558172 | CCCCCCCCCCCCCCCM963CCCCCC | 675,740.45 | 617,000.00 | 2 | Rate Modification, Prin Forgiveness, Recapita |
| 121) 9041563826 | CCCCCCCCCM9999963CCCCCCCC | 705,928.06 | 616,000.00 | 2 | Rate Modification, Recapitalization, ARM->Fix |
| 122) 9041576018 | BBBBBBBBBBBBBBBB99999999 | 627,974.84 | 614,000.00 | 2 | ARM->Fixed |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

**DESCRIPTION OF SECURITY FROM BLOOMBERG**

**Trust has been downgraded to speculative status (CCC) by Standard and Poor's from AAA status and is an indication the trust funding loan should not have been formed.** Central Mortgage Company shown as servicer (servicing agent.)

Analyze Agency CMO Menu | DSLA 2005-AR3 2A1A Mtge | DES | Message

DSLA 2005-AR3 2A1A 88-13 /88-25⅜ CUSIP 23332UDU5 Disc Mrgn 249.7/241.5
As of 19 Mar Prepay 10.02CPR WAL 5.87 Collateral 100.0% WHARM3.0% BVAL

DSLA 2005-AR3 2A1A Mtge 66) Send Security Description
CUSIP 23332UDU5 3.411(306)117 US RMBS 95) Buy 99) Sell

1) Bond Summary | 2) Group Summary | 3) Comments | 4) Structural Summary | 5) Overview

Issuer DSLA Mortgage Loan Trust — 6) Pro — 7) Docs — 16) Servicer: CENTRAL MORTGAGE (100.0...
Series 05-AR3 Class 2A1A Mty 7/19/45 — 14) ISIN US23332UDU51 — Lead Mgr: RBS Greenwich Capital
10) Class Description FLT, STEP, AFC, SSNR — BBGID BBG0008HGS95 — Trustee: Deutsche Bank Trust

| Current | |
|---|---|
| Bal USD | 44,738,609 |
| Fct (Mar 15) | 0.180525734 |
| Cpn (Mar 15) | 0.41750% |
| Class/Grp Pct | 53.43% |
| Beg Accrue | 3/19/15 |
| End Accrue | 4/19/15 |
| 11) Cr Supp | N/A |

| Original | |
|---|---|
| Bal USD | 247,824,000 |
| WAL | 4.25Yrs@ 20 CPR |
| 1st Coupon | 3.33000% |
| Class/Grp Pct | 48.56% |
| 1st Pay | 6/20/05 |
| 1st Settle | 5/25/05 |
| Dated Date | 5/25/05 |
| Priced | 5/20/05 |

| Payment Details | |
|---|---|
| Next Pay | 4/20/15 |
| Rcd Date | 4/19/15 |
| Pay Date | 19th |
| Frequency | 12 |
| Pay Delay | 0 Days |
| Day Count | ACT/360 |
| Calendar | US |
| Call | 5% Collat Call |

| 12) Rtg | Curr | Orig |
|---|---|---|
| S&P | CCC | AAA |
| MDY | B3 | Aaa |

Additional Information
Clearstream, DTC Book Entry, DTC Same Day, Euroclear, TRACE, SMMEA

Min Size 25,000
Increment 1

15) Historical Paydown - (CPD) | Classic | Credit

| | Feb15 | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VPR | 0.3 | 0.3 | 0.3 | 5.6 | 18.9 | 13.0 | 15.8 | 10.6 | 7.3 | 4.8 | 11.2 | 0.3 |
| CDR | 7.6 | 0.0 | 0.0 | 0.0 | 13.2 | 7.8 | 4.5 | 0.0 | 0.0 | 0.0 | 12.7 | 4.7 |
| SEV | 49.1 | | | | 41.7 | 58.2 | 32.4 | | | | 38.8 | 42.3 |
| D60+ | 10.0 | 10.5 | 11.3 | 10.3 | 10.4 | 11.0 | 14.1 | 14.7 | 16.3 | 16.1 | 16.4 | 18.2 |

13) Cpn Details (FCG)
1 x US0001M +24BP
Cap 11.00% @ 10.76%
Floor 0.24% @ 0.00%
Available Funds Cap
Monthly Reset
Next Reset 4/20/15

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

## DEAL DESCRIPTION

**Loan grouped together in 2A1A investment class along with other loans of original principal of $510 million. The loan is just one of many.**

Analyze Agency CMO Menu | DSLA 2005-AR3 2A1A Mtge | DES | Message

DSLA 2005-AR3 2A1A 88-13 /88-25⅜ CUSIP 23332UDU5 Disc Mrgn 249.7/241.5

As of 19 Mar Prepay 10.02CPR WAL 5.87 Collateral 100.0% WHARM3.0% BVAL

DSLA 2005-AR3 2A1A Mtge 66) Send Security Description

CUSIP 23332UDU5 3.411(306)117 US RMBS 95) Buy 96) Sell

1) Bond Summary | 2) Group Summary | 3) Comments | 4) Structural Summary | 5) Overview

Issuer DSLA Mortgage Loan Trust 6) Pro 7) Docs 16) Servicer CENTRAL MORTGAGE (100.0...

Series 05-AR3 17) Group Group 2 Loans Lead Mgr RBS Greenwich Capital

10) Collateral Summary 171 Loans, Prime ARM Trustee Deutsche Bank Trust

| Current 02/15 | | Original | |
|---|---|---|---|
| Bal USD | 83,737,048 | Bal USD | 510,349,744 |
| Net WAC | 3.0292 | Net WAC | 2.6318 |
| WAC | 3.411 | WAC | 3.013 |
| WAM | 25:6 306Mo | WAM | 34:11 419Mo |
| WALA | 9:9 117Mo | WALA | 0:0 0Mo |
| HPI LTV | 80.64 | HPI LTV | 72.54 |
| Cum Loss $ | 50,755,058 | | |
| % Mod Loans | 52.63 | | |
| 12 Mo PP% | 75.28 | | |
| Top Geo | CA 95.4 | | |
| Credit Score | 710 | | |
| Ltd Doc % | 89.12 | | |

11) History (SEV)

| | CPR | VPR | CDR | SEV |
|---|---|---|---|---|
| 1m | 6.8 | 0.3 | 7.6 | 49.1 |
| 3m | 2.2 | 0.3 | 2.6 | 49.1 |
| 6m | 10.5 | 6.7 | 4.9 | 48.7 |
| 12m | 11.1 | 7.5 | 4.2 | 44.6 |

Country US

15) Historical Paydown - (DPD) | Classic | Credit

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CDR | 7.6 | 0.0 | 0.0 | 0.0 | 13.2 | 7.8 | 4.5 | 0.0 | 0.0 | 0.0 | 12.7 | 4.7 |
| SEV | 49.1 | | | | 41.7 | 58.2 | 32.4 | | | | 38.8 | 42.3 |
| D60+ | 10.0 | 10.5 | 11.3 | 10.3 | 10.4 | 11.0 | 14.1 | 14.7 | 16.3 | 16.1 | 16.4 | 18.2 |
| % Mod l | 52.63 | 52.91 | 52.91 | 52.60 | 52.30 | 53.07 | 53.30 | 53.76 | 53.19 | 53.44 | 53.16 | 53.61 |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*



*RMC*

## STRUCTURED FINANCE NOTES SCREEN

**Lists the primary parties to the securitization transaction.**

**The Bank of New York may have offset at least some of the risks and losses of investor certificate holder ownership through the use of credit default swaps.**

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

**COMMENT SECTION PERTAINING TO TRUST INCLUDING CREDIT ENHANCEMENTS PROVIDING INVESTOR PROTECTION**

**Credit trigger tests have failed for the Credit Group 0 (All Collateral Group) that partly funded loan. This is an indication that this class should not have been formed.**

**Such credit protection techniques tend to weaken the argument that investors have suffered harm to the extent of such reimbursements.**

DSLA 2005-AR3 2A1A 88-13 /88-25⅜ CUSIP 23332UDU5 Disc Mrgn 249.7/241.5
As of 19 Mar Prepay 10.02CPR WAL 5.87 Collateral 100.0% WHARM3.0% BVAL
DSLA 2005-AR3 2A1A Mtge 66) Send Security Description
CUSIP 23332UDU5 3.411(306)117 US RMBS 95) Buy 96) Sell

1) Bond Summary | 2) Group Summary | 3) Comments | 4) Structural Summary | 5) Overview

| Deal/Bond Profile | |
|---|---|
| 10) Tranche Type | FLT, STEP, AFC, S... |
| Orig Structure Type | Y |
| Cross Collateralized | Yes |
| Prepay Groups | 2 |
| Curr Bond/Deal Bal % | 33.12% |
| Calls | 5% Collat Call |
| Int. Determ. Calendar(s) | GB |
| Next Rate Determ. Date | 3/17/15 |
| Rate Determ. Rule | 2 bus. days |

| Credit Enhancement | |
|---|---|
| 1M Excess Spd | 0 |
| 11) Credit Support Curr | N/A |
| Credit Support Orig | N/A |
| Thickness Curr | N/A |
| Thickness Orig | N/A |
| Wrap Provider | No Wrap |

| Structure | |
|---|---|
| Application of Funds | Shifting Int |
| Senior % | 0.89 |
| Current Senior Shift % | 1.00 |
| Scheduled Senior Shift | 0.00 |
| Actual Loss Bonds | |
| Implied Loss Bonds | |
| Bond's Rate Mod Loss | Implied |
| Cred Supp Depl Dt Occ | Yes |
| Opt Term Dt Passed | Callable |
| Pre XOVER Dist | Unique |
| Post XOVER Dist | Unchanged |

| Triggers and Tests (Feb 15) | |
|---|---|
| Credit Group 0 Cumulative Loss Trigger | N/A |
| Cum Loss Test | |
| Delinquency Test | |
| Credit Group 0 Senior Percent Trigger | Fail |
| Senior Test | |
| Credit Group 0 Two Times Trigger | Fail |
| Delinquency Test | |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*



*RMC*

## LOAN LEVEL DETAIL

Loan is shown at an original loan to value ratio of 70%, consistent with appraised value at refinancing of $1.1 million as reported by ABSNet data provided by securitization sponsor. The scheduled monthly principal and interest payment is $2,237.21.

Collateral Menu | DSLA 2005-AR3 2A1A Mtge | LLD | Message

<HELP> for explanation.

DSLA 2005-AR3 2A1A Mtge | 92) Export | 93) Quick Views | Loan Level Details

95) All Collateral As of 02/15

| | Count | Current Balance | Deal % | WALTV | Score | Original Balance | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
| All Loans in Group | 2814 | 135,092,565.65 | 100.00% | 72.1 | 707 | 951,651,447.00 | 3.45 | 298 | 117 |
| Balance >0 | 384 | 135,092,565.65 | 100.00% | 72.1 | 707 | 137,461,133.00 | 3.45 | 298 | 117 |

Jump to Column | 90) Clear Filters | Zoom 100%

| Loan ID | Mod Date | Gross Cpn | Premod Coupon | Payment Due | Original Payment | Doc | OrigLTV | Amort LTV | HALTV |
|---|---|---|---|---|---|---|---|---|---|
| | | 3.4503 | 4.8020 | 649,854.94 | 408,271.15 | L 88.8 | 72.20 | 72.09 | 81.1 |
| 105) 9041495243 | 05/01/2013 | 2.8680 | 2.9220 | 2,237.21 | 1,983.61 | L | 70.00 | 77.00 | 89.0 |

Loan uses the 12MTA index, a lifetime cap of 11.05%, and index and lifetime floor of 2.75%, which agree with the Adjustable Rate Rider recorded with the Deed of Trust

Collateral Menu | DSLA 2005-AR3 2A1A Mtge | LLD | Message

<HELP> for explanation.

DSLA 2005-AR3 2A1A Mtge | 92) Export | 93) Quick Views | Loan Level Details

95) All Collateral As of 02/15

| | Count | Current Balance | Deal % | WALTV | Score | Original Balance | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
| All Loans in Group | 2814 | 135,092,565.65 | 100.00% | 72.1 | 707 | 951,651,447.00 | 3.45 | 298 | 117 |
| Balance >0 | 384 | 135,092,565.65 | 100.00% | 72.1 | 707 | 137,461,133.00 | 3.45 | 298 | 117 |

Jump to Column | 90) Clear Filters | Zoom 100%

| Loan ID | Index | ARM Init Reset | ARM Life Cap | ARM Life Floor | ARM Margin | Geo | AcctStatus | Prop Type | Occupancy |
|---|---|---|---|---|---|---|---|---|---|
| | 12MTA | 2 | 11.0331 | 3.3003 | 3.3003 | CA 90.9 | C 87.4 | SF 75.0 | Owner Occupied 92 |
| 105) 9041495243 | 12MTA | 3 | 11.0500 | 2.7500 | 2.7500 | CA | F | SF | Owner Occupied |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

**The financial interest is stated to be limited to 0.3817% servicing fees of each month's principal and interest payment. This is a further indication that the servicing agent has no direct interest in principal but only $8.54 (0.3817% x 2,237.23) of each scheduled monthly payment.**

Collateral Menu | DSLA 2005-AR3 2A1A Mtge | LLD | Message

<HELP> for explanation.

DSLA 2005-AR3 2A1A Mtge | 92) Export | 93) Quick Views | Loan Level Details

95) All Collateral As of 02/15

| | Count | Current Balance | Deal % | WALTV | Score | Original Balance | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
| All Loans in Group | 2814 | 135,092,565.65 | 100.00% | 72.1 | 707 | 951,651,447.00 | 3.45 | 298 | 117 |
| Balance >0 | 384 | 135,092,565.65 | 100.00% | 72.1 | 707 | 137,461,133.00 | 3.45 | 298 | 117 |

Jump to Column | 96) Clear Filters | Zoom 100%

| Loan ID | MSA | Total Fee | Lien Status | Balloon | Cumul Capitalization | Cumul Forgiveness |
|---|---|---|---|---|---|---|
| | Los Angeles-Long Beach-Santa Ana, C | 0.3823 | 1 100.0 | No 100.0 | -6,685,336.07 | 1,282,074.10 |
| 105) 9041495243 | Santa Cruz-Watsonville, CA | 0.3817 | 1 | No | -41,654.84 | 0.00 |

**Property is in Rancho Cucamonga zip code 95062.**
**Cumulative forgiveness for the trust was $1.282 million, none of which was extended to the Morgensen family.**

Collateral Menu | DSLA 2005-AR3 2A1A Mtge | LLD | Message

<HELP> for explanation.

DSLA 2005-AR3 2A1A Mtge | 92) Export | 93) Quick Views | Loan Level Details

95) All Collateral As of 02/15

| | Count | Current Balance | Deal % | WALTV | Score | Original Balance | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
| All Loans in Group | 2814 | 135,092,565.65 | 100.00% | 72.1 | 707 | 951,651,447.00 | 3.45 | 298 | 117 |
| Balance >0 | 384 | 135,092,565.65 | 100.00% | 72.1 | 707 | 137,461,133.00 | 3.45 | 298 | 117 |

Jump to Column | 96) Clear Filters | Zoom 100%

| Loan ID | Total Fee | Lien Status | Mths in BFR | Balloon | Cumul Capitalization | Cumul Forgiveness | Zip |
|---|---|---|---|---|---|---|---|
| | 0.3823 | 1 100.0 | 0 | No 100.0 | -6,685,336.07 | 1,282,074.10 | 94080 1 |
| 100) 9041485145 | 0.3817 | 1 | | No | -4.41 | 0.00 | 95062 |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

## VIEW ALL LOAN CLASSES SCREEN

The loan was found in 17 of the investment classes as the loan is located in the all collateral group and group 2. Eight classes are UNPAID and the remaining nine classes are completely PAID. CUSIP numbers of each investment class are shown below.

Structure Menu | DSLA 2005-AR3 2A1A Mtge | VAC | Message

VAC

95) Options | View All Classes

DSLA 2005-AR3 DSLA MORTGAGE LOAN TRUST

Template Agency

| | CF | Class | Orig(000) | Cpn | OWAL | Factor | CUSIP | Tranche Description | Group |
|---|---|---|---|---|---|---|---|---|---|
| 1) | * | 1A | 393,486 | 0.437 | 4.24 | 0.1519 | 23332UDT8 | FLT, STEP, SSNR | Group 1 Loans |
| 2) | * | 2A1A | 247,824 | 0.417 | 4.25 | 0.1805 | 23332UDU5 | FLT, STEP, AFC, SSNR | Group 2 Loans |
| 3) | * | 2A1B | 103,260 | 0.417 | 4.25 | 0.1805 | 23332UDV3 | FLT, STEP, AFC, SSNR, SSUP | Group 2 Loans |
| 4) | * | 2A1C | 61,957 | 0.497 | 4.25 | 0.1100 | 23332UDW1 | FLT, STEP, AFC, SSUP | Group 2 Loans |
| 5) | * | 2A2 | 43,721 | 0.497 | 4.25 | 0.0846 | 23332UDX9 | FLT, STEP, AFC, SSUP | Group 2 Loans |
| 6) | Pd | X1 | 850,248 | 1.250 | 0.00 | 0.0000 | 23332UEF7 | IO, CSTR, NTL | All Collateral |
| 7) | * | X2 | 950,000 | 2.514 | 0.00 | 0.1411 | 23332UEG5 | IO, CSTR, NTL | All Collateral |
| 8) | * | PO | 0 | 0.000 | 0.00 | 3115.4760 | 23332UEJ9 | PO, CPT | All Collateral |
| 9) | Pd | AR | 0 | 5.546 | 0.00 | 0.0000 | 23332UEH3 | R, CSTR | All Collateral |
| 10) | Pd | B1 | 64,127 | 0.885 | 7.69 | 0.0000 | 23332UDY7 | SUB, FLT, STEP | All Collateral |
| 11) | Pd | B2 | 12,825 | 1.296 | 7.69 | 0.0000 | 23332UDZ4 | SUB, FLT, STEP | All Collateral |
| 12) | Pd | B3 | 6,650 | 2.197 | 7.69 | 0.0000 | 23332UEA8 | SUB, FLT, STEP | All Collateral |
| 13) | Pd | B4 | 1,900 | 2.197 | 7.69 | 0.0000 | 23332UEB6 | SUB, FLT, STEP | All Collateral |
| 14) | Pd | B5 | 5,700 | 2.306 | 0.00 | 0.0000 | 23332UEC4 | SUB, FLT, STEP | All Collateral |
| 15) | Pd | B6 | 5,225 | 2.109 | 0.00 | 0.0000 | 23332UED2 | SUB, FLT, STEP | All Collateral |
| 16) | Pd | B7 | 3,324 | 4.780 | 0.00 | 0.0000 | 23332UEE0 | SUB, FLT, STEP | All Collateral |
| 17) | * | C | 0 | 0.000 | 0.00 | | BCC0JVDI8 | SUB | All Collateral |
| 18) | * | Y | 0 | 0.000 | 0.00 | | BCC0JVDJ6 | SUB | All Collateral |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

## LOAN COLLATERAL PERFORMANCE

**Less than a handful of modifications on average each month in past nine months are noted for this Downey Savings trust in spite of a 9-13% 90 day+ delinquency rate, which almost exclusively targeting its California neighbors.**

Analyze Agency CMO Menu | DSLA 2005-AR3 2A1A Mtge | CLP | Message

<HELP> for explanation.

DSLA 2005-AR3 2A1A Mtge | 5) Export | 6) Video Tutorial | Collateral Performance

CUSIP 23332UDU5 3.411(306)117 US RMBS | 95) Buy | 96) Sell

Years of History 2 | 10) All Collateral

81) Classic | 82) Delinq | 83) Mods | 84) Characteristics | 85) Speeds | 86) Custom | 87) Transition | 88) All

| | 02/2015 | 01/2015 | 12/2014 | 11/2014 | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 |
|---|---|---|---|---|---|---|---|---|---|
| 101) Balance (M) | 135,093 | 136,103 | 136,321 | 137,505 | 138,499 | 141,277 | 143,374 | 145,865 | 147,919 |
| 102) Pool Factor | 0.142 | 0.143 | 0.143 | 0.145 | 0.146 | 0.149 | 0.151 | 0.154 | 0.156 |
| 103) # of Loans | 384 | 386 | 386 | 391 | 393 | 398 | 402 | 408 | 415 |
| 104) WAC | 3.450 | 3.487 | 3.497 | 3.540 | 3.560 | 3.580 | 3.614 | 3.622 | 3.664 |
| 105) Net WAC | 3.068 | 3.105 | 3.115 | 3.158 | 3.178 | 3.198 | 3.232 | 3.240 | 3.282 |
| 106) WAM | 298 | 299 | 300 | 300 | 301 | 303 | 304 | 305 | 306 |
| 107) WALA | 117 | 116 | 115 | 114 | 113 | 112 | 111 | 110 | 109 |
| 108) WALTV (Amort) % | 72.09 | 72.13 | 72.23 | 72.20 | 72.28 | 72.72 | 72.67 | 72.77 | 72.78 |
| 109) HPI LTV (Amort) % | 81.13 | 81.38 | 81.46 | 81.14 | 81.17 | 81.56 | 81.78 | 81.82 | 82.17 |
| 110) LTV > 80% | 26.59 | 27.26 | 27.43 | 27.73 | 27.50 | 28.50 | 28.89 | 28.44 | 28.48 |
| 111) Delinq 30 days % | 2.50 | 3.03 | 2.43 | 3.50 | 4.97 | 4.00 | 1.93 | 2.66 | 2.91 |
| 112) Delinq 60 days % | 1.44 | 2.02 | 1.97 | 2.06 | 1.12 | 0.47 | 0.79 | 2.19 | 1.89 |
| 113) Delinq 90 days % | 0.95 | 0.84 | 1.37 | 0.65 | 0.82 | 1.75 | 2.51 | 1.71 | 2.63 |
| 114) Bankruptcy % | 3.31 | 2.28 | 2.43 | 2.42 | 2.29 | 2.24 | 2.21 | 2.50 | 2.47 |
| 115) Foreclosure % | 2.37 | 3.73 | 4.08 | 4.60 | 5.38 | 4.95 | 5.87 | 5.57 | 5.49 |
| 116) REO % | 2.03 | 2.34 | 1.80 | 1.95 | 1.94 | 2.53 | 2.14 | 2.43 | 2.63 |
| 117) Delinq. 60+ % | 10.10 | 11.22 | 11.65 | 11.67 | 11.55 | 11.94 | 13.53 | 14.40 | 15.10 |
| 118) Delinq. 90+ % | 8.66 | 9.20 | 9.68 | 9.61 | 10.43 | 11.47 | 12.74 | 12.21 | 13.21 |
| 119) Cumul Loss % | 10.768 | 10.740 | 10.739 | 10.710 | 10.694 | 10.649 | 10.612 | 10.568 | 10.528 |
| 120) Second Lien % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 121) # of Mod Loans Cur Period | 4 | 3 | 5 | 4 | 3 | 4 | 4 | 7 | 3 |
| 122) Limited Doc % | 88.82 | 88.94 | 88.93 | 88.80 | 88.86 | 88.57 | 88.72 | 88.63 | 88.62 |
| 123) Credit Score | 707 | 707 | 707 | 707 | 707 | 707 | 707 | 708 | 707 |
| 124) Perfect Payer 24 Mo. % | 59.31 | 59.23 | 58.93 | 58.51 | 58.51 | 58.82 | 58.93 | 57.67 | 58.49 |
| 125) Perfect Payer 60 Mo. % | 41.32 | 41.28 | 41.73 | 40.72 | 40.94 | 40.71 | 40.83 | 39.72 | 39.74 |
| 126) Perfect Payer % | 31.56 | 31.60 | 31.64 | 31.65 | 32.07 | 32.27 | 32.59 | 32.12 | 32.19 |
| 127) Re-Default % | 17.35 | 21.00 | 18.75 | 21.26 | 23.54 | 24.56 | 23.30 | 23.70 | 27.00 |
| 128) Fixed Collat. % | 39.05 | 38.07 | 38.11 | 37.01 | 36.99 | 36.98 | 36.00 | 36.05 | 34.93 |
| 129) Balance < 417 | 53.33 | 53.53 | 53.56 | 54.22 | 54.24 | 53.56 | 53.07 | 52.89 | 53.20 |
| 130) Bal. 417 - 1MM | 46.67 | 46.47 | 46.44 | 45.78 | 45.76 | 46.44 | 46.93 | 47.11 | 46.12 |
| 131) Balance > 1MM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.68 |
| 132) Geo 1st % | CA 90.9 | CA 91.0 | CA 91.0 | CA 90.8 | CA 90.9 | CA 91.1 | CA 90.3 | CA 90.3 | CA 90.1 |
| 133) Geo 2nd % | AZ 3.4 | AZ 3.4 | AZ 3.4 | AZ 3.4 | AZ 3.4 | AZ 3.3 | AZ 3.3 | AZ 3.2 | AZ 3.2 |
| 134) Geo 3rd % | NV 1.3 | NV 1.3 | NV 1.3 | NV 1.3 | NV 1.3 | NV 1.3 | NV 1.3 | NY 1.3 | NY 1.3 |
| 135) Geo 4th % | NY 1.2 | NY 1.2 | NY 1.2 | NY 1.2 | NY 1.2 | NY 1.2 | IL 1.3 | NV 1.3 | IL 1.3 |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

## WELLS FARGO BANK MASTER SERVICER CONTACT INFORMATION FROM RECENT INVESTOR STATEMENT

Downey Savings and Loan Association
Mortgage Pass-Through Certificates
Distribution Date: 19-Mar-2015

Downey Savings and Loan Association
Mortgage Pass-Through Certificates
Series 2005-AR3

Contact: Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone: 1-866-846-4526
Fax: 240-586-8675

Certificateholder Distribution Summary

| Class | CUSIP | Record Date | Certificate Pass-Through Rate | Beginning Certificate Balance | Interest Distribution | Principal Distribution | Current Realized Loss | Ending Certificate Balance | Total Distribution | Cumulative Realized Losses |
|---|---|---|---|---|---|---|---|---|---|---|
| 1-A | 23332UDT8 | 03/18/2015 | 0.43350 % | 60,109,242.97 | 20,266.83 | 321,128.31 | 0.00 | 59,788,114.66 | 341,395.14 | 0.00 |
| A-R-I | 23332UEH3 | 02/27/2015 | 5.58035 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-R-II | 23332UEK6 | 02/27/2015 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 2-A1A | 23332UDU5 | 03/18/2015 | 0.41350 % | 45,083,096.12 | 14,499.22 | 344,486.62 | 0.00 | 44,738,609.49 | 358,985.84 | 0.00 |
| 2-A1B | 23332UDV3 | 03/18/2015 | 0.41350 % | 18,784,623.38 | 6,041.34 | 143,536.09 | 0.00 | 18,641,087.29 | 149,577.43 | 0.00 |
| 2-A1C | 23332UDW1 | 03/18/2015 | 0.49350 % | 6,867,681.10 | 2,636.04 | 52,480.90 | 2,365.68 | 6,812,834.52 | 55,116.94 | 5,129,280.90 |
| 2-A2 | 23332UDX9 | 03/18/2015 | 0.49350 % | 3,902,716.47 | 1,497.99 | 29,824.82 | 176,147.35 | 3,696,744.31 | 31,322.81 | 4,851,098.07 |
| B-1 | 23332UDY7 | 03/18/2015 | 0.85350 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60,547,495.99 |
| B-2 | 23332UDZ4 | 03/18/2015 | 1.22350 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12,152,950.82 |
| B-3 | 23332UEA8 | 03/18/2015 | 1.92350 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,326,937.89 |
| B-4 | 23332UEB6 | 03/18/2015 | 1.92350 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,807,696.54 |
| B-5 | 23332UEC4 | 03/18/2015 | 1.92350 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,426,966.81 |
| B-6 | 23332UED2 | 03/18/2015 | 1.92350 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,977,525.38 |
| B-7 | 23332UEE0 | 03/18/2015 | 1.92350 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,172,914.76 |
| X-1 | 23332UEF7 | 02/27/2015 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| X-2 | 23332UEG5 | 02/27/2015 | 2.59448 % | 0.00 | 292,078.79 | 0.00 | 0.00 | 0.00 | 292,078.79 | 0.00 |
| PO | 23332UEJ9 | 02/27/2015 | 0.00000 % | 311,923.67 | 0.00 | 0.00 | 376.07 | 311,547.60 | 0.00 | 12,852.90 |
| Y | DSL05AR3Y | 02/27/2015 | 0.00000 % | 0.01 | 0.00 | 0.00 | 0.00 | 0.01 | 0.00 | 0.00 |
| C | DSL05AR3C | 02/27/2015 | 0.00000 % | 0.01 | 0.00 | 0.00 | 0.00 | 0.01 | 0.00 | 0.00 |
| Totals | | | | 135,059,283.73 | 337,020.21 | 891,456.74 | 178,889.10 | 133,988,937.89 | 1,228,476.95 | 104,405,720.06 |

This report is compiled by Wells Fargo Bank, N.A. from information provided by third parties. Wells Fargo Bank, N.A. has not independently confirmed the accuracy of the information.

All Record Dates are based upon the governing documents and logic set forth as of closing.

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

*RMC*

## LOSS SEVERITY

**Approximately 11% of the All Collateral Group has gone bad, and is an indication that this investment group partially funding loan should not have been formed.**

Collateral Menu | DSLA 2005-AR3 2A1A Mtge | SEV | Message

<HELP> for explanation.

DSLA 2005-AR3 2A1A Mtge | 5) Export | Bond/Deal Pay History

CUSIP 23332UDU5 3.411(306)117 US RMBS | 7) Buy | 8) Sell

4) All Collateral

1) Bond (CPD) | 2) Collateral (DPD) | 3) Performance (SEV)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Curr Collat | 135,092,566 | Net Cpn | 3.068 | WALA | 117 | Cum Loss | 102,299,820 |
| Orig Collat | 950,000,403 | WAC | 3.4503 | WAM | 298 | Cum Loss % | 10.77 |
| Pool Factor | 0.1422026 | | | # of Loans | 384 | | |

| | VPR | | | | CDR | | | | Severity | | | | Forgiveness | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | 1M | 3M | 6M | 12M | 1M | 3M | 6M | 12M | 1M | 3M | 6M | 12M | 1M | 3M | 6M | 12M |
| 02/15 | 2.63 | 2.59 | 6.08 | 6.20 | 4.80 | 3.02 | 4.12 | 4.70 | 49.05 | 52.70 | 50.32 | 48.86 | 0.00 | 0.00 | 0.00 | 0.00 |
| 01/15 | 0.33 | 3.35 | 7.33 | 6.28 | 0.00 | 2.20 | 4.58 | 4.57 | | 54.91 | 51.03 | 48.62 | 0.00 | 0.00 | 0.00 | 0.00 |
| 12/14 | 4.76 | 7.36 | 8.57 | 6.42 | 4.21 | 5.01 | 5.60 | 5.00 | 56.71 | 47.18 | 50.08 | 47.15 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11/14 | 4.86 | 9.42 | 8.56 | 6.07 | 2.36 | 5.24 | 5.36 | 5.35 | 51.72 | 48.95 | 49.12 | 45.22 | 0.00 | 0.00 | 0.00 | 0.00 |
| 10/14 | 12.28 | 11.14 | 9.00 | 6.29 | 8.41 | 6.92 | 5.69 | 5.75 | 41.72 | 49.37 | 49.96 | 44.45 | 0.00 | 0.00 | 0.00 | 0.13 |
| 09/14 | 10.98 | 9.82 | 8.15 | 5.46 | 4.94 | 6.28 | 5.66 | 5.53 | 58.19 | 51.79 | 49.14 | 42.06 | 0.00 | 0.00 | 0.00 | 0.20 |
| 08/14 | 10.27 | 7.78 | 6.42 | 5.00 | 7.54 | 5.55 | 5.36 | 5.68 | 52.31 | 49.23 | 47.73 | 38.11 | 0.00 | 0.00 | 0.00 | 0.23 |
| 07/14 | 8.31 | 6.89 | 5.32 | 4.17 | 6.44 | 4.53 | 4.63 | 5.51 | 46.14 | 50.73 | 46.28 | 38.09 | 0.00 | 0.00 | 0.00 | 0.22 |
| 06/14 | 4.73 | 6.54 | 4.35 | 3.92 | 2.68 | 5.12 | 4.46 | 5.58 | 48.30 | 46.20 | 44.17 | 35.86 | 0.00 | 0.00 | 0.00 | 0.33 |
| 05/14 | 7.62 | 5.12 | 3.63 | 3.93 | 4.49 | 5.21 | 5.33 | 6.29 | 58.76 | 46.30 | 41.91 | 36.61 | 0.00 | 0.00 | 0.00 | 0.48 |
| 04/14 | 7.30 | 3.78 | 3.66 | 3.33 | 8.12 | 4.75 | 5.82 | 6.31 | 38.81 | 42.59 | 39.82 | 36.71 | 0.00 | 0.00 | 0.26 | 0.48 |
| 03/14 | 0.32 | 2.15 | 2.82 | 2.88 | 2.94 | 3.80 | 5.37 | 7.07 | 42.30 | 39.88 | 34.70 | 36.49 | 0.00 | 0.00 | 0.39 | 0.47 |
| 02/14 | 3.63 | 2.13 | 3.68 | 2.82 | 3.12 | 5.41 | 6.01 | 8.45 | 45.45 | 37.71 | 30.26 | 37.17 | 0.00 | 0.00 | 0.45 | 0.46 |
| 01/14 | 2.48 | 3.56 | 3.11 | 2.53 | 5.32 | 6.85 | 6.36 | 8.93 | 35.29 | 37.92 | 32.43 | 36.36 | 0.00 | 0.51 | 0.44 | 0.46 |
| 12/13 | 0.25 | 3.49 | 3.59 | 2.32 | 7.64 | 6.89 | 6.69 | 9.91 | 36.30 | 31.92 | 30.64 | 35.82 | 0.00 | 0.78 | 0.65 | 0.45 |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

## CURRENT LITIGATION INVOLVING DSLA MORTGAGE LOAN TRUST 2005-AR3 USING A BLOOMBERG LAW SEARCH OF DOCKETS

## RESULTS

| Date | Case Name | Docket Number | Heat |
|---|---|---|---|
| 1) 02/21/2014 | Clarita Barcarse, et al v. Central Mortgage Company, et al, Docket No. 14-55285 (9th Cir. F... | 14-55285 | |
| 2) 06/18/2013 | Isaias R. Barcarse et al v. Central Mortgage Company et al, Docket No. 2:13-cv-04386 (C.D... | 2:13-cv-04386 | |
| 3) 10/18/2012 | Isaias Barbarse vs Central Mortgage Company, Docket No. 56-2012-00425928-CU-OR-VTA (... | 56-2012-00425928 | |
| 4) 06/01/2012 | Emerita Ross et al v. Mortgage Electronic Systems, Inc et al, Docket No. 2:12-cv-04830 (C.... | 2:12-cv-04830 | |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

- The Mortgage has MIN number 1002026-9041495243-4 and is registered at the MERS SERVICER ID website https://www.mers-servicerid.org/sis/search showing Central Mortgage Company as Servicer. The information required to access any stated "investor" not available at the time of this report.
- Although MERS records an assignment in the real property records, the promissory note which creates the legal obligation to repay the debt has not been transferred nor negotiated by MERS.
- MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or MORTGAGE sale.
- MERS is never the owner of the promissory note for which it seeks foreclosure.
- MERS has no legal or beneficial interest in the loan instrument underlying the security instrument for which it serves as "nominee".
- MERS has no legal or beneficial interest in the mortgage indebtedness underlying the security instrument for which it serves as "nominee".
- MERS has no interest at all in the promissory note evidencing the mortgage indebtedness.
- MERS is not a party to the alleged mortgage indebtedness underlying the security instrument for which it serves as "nominee".
- MERS has no financial or other interest in whether or not a mortgage loan is repaid.

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

# *RMC*

**The loan is *registered* within the MERS database showing Central Mortgage Company as Servicer.**

Process Loans, Not Paperwork™

**1 record matched your search:**

***Need help?***

MIN: **1002026-9041495243-4** Note Date: **03/15/2005** MIN Status: **Inactive**

Servicer: Central Mortgage Company
**Little Rock, AR**

Phone: **(800) 366-2132**

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Copyright© 2012 by MERSCORP Holdings, Inc.

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***



RMC

## CONCLUSION

## CHAIN OF TITLE

DAVID & PATRICIA MORGENSEN
BORROWER
TRUSTOR
MORTGAGOR/MORTGAGER
GRANTOR
DEED OF TRUST
OLD REPUBLIC TITLE COMPANY
TITLE COMPANY/ ESCROW
SANTA CRUZ COUNTY CALIFORNIA
MAINTAINS ASSIGNMENT HISTORY
DEED ISSUED TO MERS
SPLIT FROM NOTE
PROMISSORY NOTE
MONTHLY PAYMENTS
NOTE WAS SPLIT FROM THE DEED
MERS
REGISTRY
Maintains Assignment History
No physical possession
No pecuniary interest
"The mortgage or Assignment of the mortgage of some of the mortgage loan have been or may be recorded in the name of MERS, solely as Nominee for the originator and its successors and assigns"
"MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the Trustee and does not have interest in the mortgage loan
NOTE WAS SOLD & TRANSFERRED
DOWNEY SAVINGS AND LOAN ASSOCIATION, FA
LENDER/ ORIGINATOR
DOWNEY SAVINGS AND LOAN ASSOCIATION, FA
MASTER SERVICER
Services individual loans; Aggregates Collection; Performs Duties under Trust's Pooling & Servicing Agreement
GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.
SELLER
Purchases loans from originator; forms pool
CERTIFICATES
RBS GREENWICH CAPITAL UNDERWRITERS
SELLS CERTIFICATES TO INVESTORS; COLLECTS OFFERING PROCEEDS
CERTIFICATES
GREENWICH CAPITAL ACCEPTANCE, INC.
DEPOSITOR
Creates Issuing Entity
CERTIFICATES
OFFERING PROCEEDS
DEUTSCHE BANK NATIONAL TRUST COMPANY
TRUSTEE FOR THE TRUST
Represents Investors' Interests; Calculates Cash Flows; Remits Net Revenues
UNDERLYING CUSTODIAN
Document Custody
INVESTORS
Purchase Mortgage Backed Securities as defined in Certificates
DSLA MORTGAGE LOAN TRUST 2005-AR3
TRUST FUND – ISSUING ENTITY
Holds pool of loans; issues certificates
RETURN ON INVESTMENTS
ARROW LEGEND
PURPLE – MORTGAGE DOCUMENTS
BLUE – SECURITIES CERTIFICATES
RED – INVESTOR FUNDS
GREEN – BORROWER FUNDS

Page | 45

REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015
-All Rights Reserved-

ξ For traditional lending prior to Securitization, the original Deed recording was usually the only recorded document in the Chain of Title. That is because banks kept the loans, and did not sell the loan, hence, only the original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac, involved an entirely new process in mortgage lending. With Securitization, the Notes and Deeds were sold once, twice, three times or more. Using the traditional model would involve recording new Assignments of the Deed and Note as each transfer of the Note or Deed of Trust occurred. Obviously, this required time and money for each recording.

(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees. Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights.)

ξ Securitizing a Loan

Securitizing a loan is the process of selling a loan to Wall Street and private investors. it is a method with many issues to be considered. The methodology of securitizing a loan generally followed these steps:

- A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the Wall Street firm "pre-sold" the bonds.

- The Wall Street firm would approach a lender and usually offer them a warehouse Line of Credit. The Warehouse Credit Line would be used to fund the loan. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.

- The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Lender would execute the loan and fund it, collecting payments until there were enough loans funded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary loans were funded, the lender would then sell the loans to the "Sponsor", usually either a subsidiary of the Wall Street firm, of a specially created Corporation of the lender. At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.

- Next, the loans were "sold" to the "Depositor." This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or the loans are "protected" from the lender. The "Depositor" would be, once again, created by the Wall Street firm or the lender.

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

- Then the "Depositor" would place the loans into the Issuing Entity, which is another entity created solely for the purpose of selling the bonds.

- Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.

ξ DOWNEY SAVINGS AND LOAN ASSOCIATION, FA was a "correspondent lender" that originated mortgage loans. These loans, in turn, were been sold and transferred into a "federally-approved securitization" trust named the DSLA MORTGAGE LOAN TRUST 2005-AR3.

ξ The Note and Deed have taken two distinctly different paths. The Note was been securitized into the DSLA MORTGAGE LOAN TRUST 2005-AR3.

ξ The written agreement that created the DSLA MORTGAGE LOAN TRUST 2005-AR3 is a "Pooling and Servicing Agreement" (PSA), and is a matter of public record, available on the website of the Securities Exchange Commission. The Trust is also described in a "Prospectus Supplement," also available on the SEC website. The Trust by its terms set a "CLOSING DATE" of ON OR ABOUT MAY 25, 2005. The promissory note in this case became trust property in compliance with the requirement set forth in the PSA. The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the PSA are governed under the law.

ξ In view of the foregoing, the Assignments of Deed of Trust executed after the Trust's Closing Date would be a void acts for the reason that it violated the express terms of the Trust instrument.

ξ The Loan was originally made to DOWNEY SAVINGS AND LOAN ASSOCIATION, FA and may have been sold and transferred to DSLA MORTGAGE LOAN TRUST 2005-AR3. There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

> In Carpenter v. Longan 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."
>
> > An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. It is impossible to define security apart from its relationship to the promise or obligation it secures. The obligation and the security are commonly drafted as separate documents – typically a promissory note and a deed of trust. If the creditor transfers the note but not the deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically. If the transferee is given the deed of trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685).
> >
> > "Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000).
>
> By statute, assignment of the mortgage carries with it the assignment of the debt. . . Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust,

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

with the deed of trust lying with some independent entity, the mortgage may become unenforceable. The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. Without the agency relationship, the person holding only the trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust."

**Securitization Summary:**

1. Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no legal enforcement of the Note. The Deed of Trust enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the Deed of Trust and the Note are separated, foreclosure legally cannot occur. The Note cannot be enforced by the Deed of Trust if each contains a different mortgagee/beneficiary; and, if the Deed of Trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

2. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio. This is an indication that either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

3. In the event that the loan was sold, pooled and turned into a security. such event would indicate that the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

4. Further said, once the Note was converted into a stock, or stock equivalent, that event would indicate that the Note is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. Double dipping is a form of securities fraud.

5. Once a loan has been securitized, which the aforementioned loan may have been done many times, that event would indicate that the loan forever loses its security component (i.e., the Deed of Trust), and the right to foreclose through the Deed of Trust is forever lost.

6. The findings of this report indicate that the Promissory Note has been converted into a stock as a permanent fixture. As a stock it is governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements, pooling and servicing agreements, form 424B-5, et.al. There is no evidence on Record to indicate that the Deed of Trust was ever transferred concurrently with the purported legal transfer of the Note, such that the Deed of Trust and Note has been irrevocably separated, thus making a nullity out of the purported security in a property, as claimed.

7. Careful review and examination reveals that this was a securitized loan. The Assignments of Deed of Trust were not made by the Depositor of the identified trust funding loan or by the closing date of the trust as required by SEC investor agreements. Subsequent foreclosure actions are dependent upon such invalid Assignments. Examiner supplies this report as written testimony and is available for oral testimony.

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

**DISCLAIMER**

**This report was based exclusively on the documentation provided. It also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings. The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.**

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

*RMC*

**AFFIDAVIT OF FACTS**

**STATE OF CALIFORNIA )**
**) sv.: AFFIDAVIT**
**COUNTY OF LOS ANGELES )**

**RE: David and Patricia Morgensen**

I, MICHAEL CARRIGAN, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1. That I am a subscriber of the Bloomberg Professional Service, certified and licensed to use such service. I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the on the Bloomberg terminal.

2. I am a Certified Mortgage Securitization Auditor and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have produced approximately two thousand seven hundred Securitized Analysis Reports in residential real estate mortgage investigation in 46 states, the District of Columbia and Puerto Rico, have testified as an expert witness, and have trained auditors in California, Florida, Georgia, Nevada, New York, New Jersey and Virginia and via the Internet in webinar format. I have a Bachelor's degree with a concentration in Accounting in Business Administration from California State University, Fullerton; a Master's in Business Administration from the UCLA Anderson School of Management; and have had formal training and career experience in accounting; financial reporting; internal control; SEC reporting; financial planning and analysis; financial forecasting; initial public and secondary offerings; corporate tax; corporate finance; investment management; equity, fixed income and derivative securities; credit analysis; asset valuation; ethics; investment advisory services including Series 7 and 66 licensing; real estate investment; real estate finance; real estate principles; redevelopment; government accounting; and procurement.

3. I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of mortgage and loan related documents and information.

4. The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

[1]The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

5. On March 20, 2015, I researched the Bloomberg online Database at the request of DAVID AND PATRICIA MORGENSEN whose property address is 375 Woodland Drive, Scotts Valley, CA 95066.

6. Based on the information I was provided, DAVID AND PATRICIA MORGENSEN signed a Promissory Note in favor of Downey Savings and Loan Association, FA on March 15, 2005.

7. Note was identified in the DSLA MORTGAGE LOAN TRUST 2005-AR3 with the Master Servicer being DOWNEY SAVINGS AND LOAN ASSOCIATION, FA; the Sponsor / Seller being GREENWICH CAPITAL FINANCIAL PRODUCTS, INC. and the Depositor being GREENWICH CAPITAL ACCEPTANCE, INC.

8. The basis of the identification of Loan in DSLA MORTGAGE LOAN TRUST 2005-AR3 was made from the following factors/information that exactly correspond with DAVID AND PATRICIA MORGENSEN loan documents provided: Loan Number: 9041495243; Original Amount: $770,000.00; Origination Date: March 15, 2005; Location of Property: CA; Property Type: Single Family Residence; Occupancy: Owner Occupied; Zip Code: 95066; Type Loan: Conventional 40 Year Adjustable Rate Loan.

9. DAVID AND PATRICIA MORGENSEN Note was split-apart or fractionalized, as separate accounting entries and deposited separately into Classes. Each Class is insured up to 30 times the face value of each Note therein, which is permissible under the Federal Reserve System.

10. Pursuant to my extensive research, I have found the Loan in seventeen (17) Classes of the DSLA MORTGAGE LOAN TRUST 2005-AR3. These classes represent the sections that the DSLA MORTGAGE LOAN TRUST 2005-AR3 are divided into. Individuals invest in these Classes based on their desired maturities, yield, credit rating and other factors. The DSLA MORTGAGE LOAN TRUST 2005-AR3 pays interest, usually monthly, to investors and principal payments are paid out in the order of the maturity and as specified in trust agreements.

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

# RMC

11. Below are the classes the DSLA MORTGAGE LOAN TRUST 2005-AR3 has been divided into and their CUSIP number which is a nine (9) character alphanumeric code identifying any North American security for the purpose of facilitating clearing and settlement of trades.

Structure Menu | DSLA 2005-AR3 2A1A Mtge | VAC | Message

VAC

95) Options | View All Classes

DSLA 2005-AR3 DSLA MORTGAGE LOAN TRUST

Template: Agency

| CF | Class | Orig(000) | Cpn | OWAL | Factor | CUSIP | Tranche Description | Group |
|---|---|---|---|---|---|---|---|---|
| 1) * | 1A | 393,486 | 0.437 | 4.24 | 0.1519 | 23332UDT8 | FLT, STEP, SSNR | Group 1 Loans |
| 2) * | 2A1A | 247,824 | 0.417 | 4.25 | 0.1805 | 23332UDU5 | FLT, STEP, AFC, SSNR | Group 2 Loans |
| 3) * | 2A1B | 103,260 | 0.417 | 4.25 | 0.1805 | 23332UDV3 | FLT, STEP, AFC, SSNR, SSUP | Group 2 Loans |
| 4) * | 2A1C | 61,957 | 0.497 | 4.25 | 0.1100 | 23332UDW1 | FLT, STEP, AFC, SSUP | Group 2 Loans |
| 5) * | 2A2 | 43,721 | 0.497 | 4.25 | 0.0846 | 23332UDX9 | FLT, STEP, AFC, SSUP | Group 2 Loans |
| 6) Pd | X1 | 850,248 | 1.250 | 0.00 | 0.0000 | 23332UEF7 | IO, CSTR, NTL | All Collateral |
| 7) * | X2 | 950,000 | 2.514 | 0.00 | 0.1411 | 23332UEG5 | IO, CSTR, NTL | All Collateral |
| 8) * | PO | 0 | 0.000 | 0.00 | 3115.4760 | 23332UEJ9 | PO, CPT | All Collateral |
| 9) Pd | AR | 0 | 5.546 | 0.00 | 0.0000 | 23332UEH3 | R, CSTR | All Collateral |
| 10) Pd | B1 | 64,127 | 0.885 | 7.69 | 0.0000 | 23332UDY7 | SUB, FLT, STEP | All Collateral |
| 11) Pd | B2 | 12,825 | 1.296 | 7.69 | 0.0000 | 23332UDZ4 | SUB, FLT, STEP | All Collateral |
| 12) Pd | B3 | 6,650 | 2.197 | 7.69 | 0.0000 | 23332UEA8 | SUB, FLT, STEP | All Collateral |
| 13) Pd | B4 | 1,900 | 2.197 | 7.69 | 0.0000 | 23332UEB6 | SUB, FLT, STEP | All Collateral |
| 14) Pd | B5 | 5,700 | 2.306 | 0.00 | 0.0000 | 23332UEC4 | SUB, FLT, STEP | All Collateral |
| 15) Pd | B6 | 5,225 | 2.109 | 0.00 | 0.0000 | 23332UED2 | SUB, FLT, STEP | All Collateral |
| 16) Pd | B7 | 3,324 | 4.780 | 0.00 | 0.0000 | 23332UEE0 | SUB, FLT, STEP | All Collateral |
| 17) * | C | 0 | 0.000 | 0.00 | | BCC0JVDI8 | SUB | All Collateral |
| 18) * | Y | 0 | 0.000 | 0.00 | | BCC0JVDJ6 | SUB | All Collateral |

12. There are a total of seventeen (17) classes in the DSLA MORTGAGE LOAN TRUST 2005-AR3.

13. The loan is in seventeen (17) classes. Nine classes (2) classes out of the seventeen (17) have been paid (Pd). The loan is in the all collateral group and group 2.

By:

Michael Carrigan
Certified Mortgage Securitization Auditor / Bloomberg Specialist

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT** **CIVIL CODE § 1189**

A Notary public or other completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA )**
**) sv.: AFFIDAVIT**
**COUNTY OF LOS ANGELES )**

On ____________, 2015 before me, ________________________________________
(Notary Public)

personally appeared **Michael Carrigan**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTYOF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __________________________ (Seal)

My commission Expires __________________________

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

*RMC*

**EXHIBIT I**

**Voluntary Lien Search results**

**Transaction Details for**
**375 WOODLAND DR, SCOTTS VALLEY CA 95066**
**APN: 093-162-34-000**

**History Record #: 1**
***Foreclosure:***

Recording Date: **04/23/2013** Filing Date: **04/22/2013**
Document Number: **2013.20036** Orig Recording Date: **03/21/2005**
Document Type: **NOTICE OF DEFAULT** Orig Doc Number: **18568**
Trustee: **OLD REPUBLIC DEFAULT MGMT SVCS** Trustee Phone:
Title Company: Unpaid Balance:
Defendant: **MORGENSEN DAVID & PATRICIA**

**History Record #: 2**
***Foreclosure:***

Recording Date: **07/13/2011** Filing Date:
Document Number: **2011.27910** Orig Recording Date: **03/21/2005**
Document Type: **NOTICE OF TRUSTEE SALE** Orig Doc Number: **18568**
Trustee: Trustee Phone:
Title Company: Unpaid Balance:
Defendant:

**History Record #: 3**
***Assignment:***

Recording Date: **07/13/2011** Orig Recording Date: **03/21/2005**
Document Number: **2011.27909** Orig Doc Number: **18568**
Document Type: **ASSIGNMENT**
New Lender:
Previous Lender:
Borrower:

**History Record #: 4**
***Assignment:***

Recording Date: **12/30/2010** Orig Recording Date: **05/10/2005**
Document Number: **2010.55681** Orig Doc Number: **31182**
Document Type: **ASSIGNMENT**
New Lender:
Previous Lender:
Borrower:

**History Record #: 5**
***Foreclosure:***

Recording Date: **09/30/2010** Filing Date:
Document Number: **2010.39595** Orig Recording Date: **03/21/2005**
Document Type: **RESCISSION OF NOTICE OF DEFAULT** Orig Doc Number: **18568**
Trustee: Trustee Phone:
Title Company: Unpaid Balance:
Defendant:

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

RMC

**History Record #: 6**
***Foreclosure:***
Recording Date: 09/28/2010
Document Number: 2010.39036
Document Type: NOTICE OF DEFAULT
Trustee:
Title Company:
Defendant:
Filing Date:
Orig Recording Date: 03/21/2005
Orig Doc Number: 18568
Trustee Phone:
Unpaid Balance:

**History Record #: 7**
***Foreclosure:***
Recording Date: 04/10/2008
Document Number: 2008.15255
Document Type: SUBSTITUTION OF TRUSTEE
Filing Date:
Orig Recording Date: 03/21/2005
Orig Doc Number: 18568

Trustee:
Title Company:
Defendant:
Trustee Phone:
Unpaid Balance:

**History Record #: 8**
***Foreclosure:***
Recording Date: 02/01/2008
Document Number: 2008.4109
Document Type: NOTICE OF DEFAULT
Trustee:
Title Company:
Defendant:
Filing Date:
Orig Recording Date: 03/21/2005
Orig Doc Number: 18568
Trustee Phone:
Unpaid Balance:

**History Record #: 9**
***Assignment:***
Recording Date: 01/09/2006
Document Number: 2006.1288
Document Type: ASSIGNMENT
New Lender:
Previous Lender:
Borrower:
Orig Recording Date: 03/21/2005
Orig Doc Number: 18568

REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015
-All Rights Reserved-

# RMC

**History Record #: 10**
***Finance:***

| | | | |
|---|---|---|---|
| Recording Date: | 11/02/2005 | Finance Type: | REFINANCE |
| Document Number: | 2005.77161 | Mortgage Loan Type: | |
| Document Type: | TRUST DEED/MORTGAGE | Mortgage Term: | |
| Lender: | UNION COMMUNITY HOLDINGS LLC | Mortgage Rate Type: | FIXED |
| Loan Amount: | $62,500.00 | Mortgage Rate: | |
| Borrower: | MORGENSEN PATRICIA J | | |
| Borrower: | MORGENSEN DAVID A | | |

**History Record #: 11**
***Sale/Transfer:***

| | | | |
|---|---|---|---|
| Recording Date: | 05/12/2005 | Sale Date: | |
| Document Number: | 2005.31726 | Sale Price: | |
| Document Type: | DEED TRANSFER | Sale Type: | |
| Title Company: | | | |
| Buyer: | MORGENSEN DAVID & P TRUST | | |
| Seller: | MORGENSEN DAVID A & PATRICIA J | | |

**History Record #: 12**
***Sale/Transfer:***

| | | | |
|---|---|---|---|
| Recording Date: | 05/10/2005 | Sale Date: | 04/21/2005 |
| Document Number: | 2005.31181 | Sale Price: | |
| Document Type: | DEED TRANSFER | Sale Type: | |
| Title Company: | NEW CENTURY TITLE | | |
| Buyer: | MORGENSEN,DAVID A & PATRICIA J | | |
| Seller: | MORGENSEN DAVID & P TRUST | | |

***Finance:***

| | | | |
|---|---|---|---|
| Recording Date: | 05/10/2005 | Finance Type: | REFINANCE |
| Document Number: | 2005.31182 | Mortgage Loan Type: | |
| Document Type: | TRUST DEED/MORTGAGE | Mortgage Term: | |
| Lender: | FIRST HORIZON HOME LOAN CORP | Mortgage Rate Type: | VARIABLE |
| Loan Amount: | $141,900.00 | Mortgage Rate: | |
| Borrower: | MORGENSEN DAVID A | | |
| Borrower: | MORGENSEN PATRICIA J | | |

**History Record #: 13**
***Release:***

| | | | |
|---|---|---|---|
| Recording Date: | 04/21/2005 | Orig Recording Date: | 12/03/2002 |
| Document Number: | 2005.26320 | Orig Doc Number: | 89116 |
| Document Type: | RELEASE | | |

**History Record #: 14**
***Release:***

| | | | |
|---|---|---|---|
| Recording Date: | 04/07/2005 | Orig Recording Date: | 10/29/2002 |
| Document Number: | 2005.22567 | Orig Doc Number: | 78360 |
| Document Type: | RELEASE | | |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

# RMC

**History Record #: 15**
***Sale/Transfer:***

| | | | |
|---|---|---|---|
| Recording Date: | **03/22/2005** | Sale Date: | |
| Document Number: | **2005.18680** | Sale Price: | |
| Document Type: | **DEED TRANSFER** | Sale Type: | |
| Title Company: | | | |
| Buyer: | **MORGENSEN DAVID & P TRUST** | | |
| Seller: | **MORGENSEN DAVID & PATRICIA** | | |

**History Record #: 16**
***Sale/Transfer:***

| | | | |
|---|---|---|---|
| Recording Date: | **03/21/2005** | Sale Date: | |
| Document Number: | **2005.18567** | Sale Price: | |
| Document Type: | **DEED TRANSFER** | Sale Type: | |
| Title Company: | **OLD REPUBLIC TITLE** | | |
| Buyer: | **MORGENSEN,DAVID & PATRICIA** | | |
| Seller: | **MORGENSEN DAVID & P TRUST** | | |

***Finance:***

| | | | |
|---|---|---|---|
| Recording Date: | **03/21/2005** | Finance Type: | **REFINANCE** |
| Document Number: | **2005.18568** | Mortgage Loan Type: | |
| Document Type: | **TRUST DEED/MORTGAGE** | Mortgage Term: | |
| Lender: | **DOWNEY S & L (WHOLESALE)** | Mortgage Rate Type: | **VARIABLE** |
| Loan Amount: | **$770,000.00** | Mortgage Rate: | |
| Borrower: | **MORGENSEN PATRICIA** | | |
| Borrower: | **MORGENSEN DAVID** | | |

**History Record #: 17**
***Sale/Transfer:***

| | | | |
|---|---|---|---|
| Recording Date: | **10/07/2003** | Sale Date: | |
| Document Number: | **2003.102285** | Sale Price: | |
| Document Type: | **DEED TRANSFER** | Sale Type: | |
| Title Company: | | | |
| Buyer: | **MORGENSEN,TR** | | |
| Seller: | **MORGENSEN DAVID A & PATRICIA J** | | |

**History Record #: 18**
***Finance:***

| | | | |
|---|---|---|---|
| Recording Date: | **12/03/2002** | Finance Type: | **REFINANCE** |
| Document Number: | **2002.89116** | Mortgage Loan Type: | |
| Document Type: | **TRUST DEED/MORTGAGE** | Mortgage Term: | |
| Lender: | **WELLS FARGO BANK** | Mortgage Rate Type: | **VARIABLE** |
| Loan Amount: | **$100,000.00** | Mortgage Rate: | |
| Borrower: | **MORGENSEN DAVID A** | | |
| Borrower: | **MORGENSEN PATRICIA J** | | |

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

# RMC

**History Record #: 19**
***Release:***

| | | | |
|---|---|---|---|
| Recording Date: | 11/21/2002 | Orig Recording Date: | 06/20/2002 |
| Document Number: | 2002.85973 | Orig Doc Number: | 44084 |
| Document Type: | RELEASE | | |

**History Record #: 20**
***Finance:***

| | | | |
|---|---|---|---|
| Recording Date: | 10/29/2002 | Finance Type: | REFINANCE |
| Document Number: | 2002.78360 | Mortgage Loan Type: | |
| Document Type: | TRUST DEED/MORTGAGE | Mortgage Term: | |
| Lender: | WASHINGTON MUTUAL FSB | Mortgage Rate Type: | VARIABLE |
| Loan Amount: | $633,750.00 | Mortgage Rate: | |
| Borrower: | MARTINS DAVID A | | |
| Borrower: | MARTINS PATRICIA J | | |

**History Record #: 21**
***Release:***

| | | | |
|---|---|---|---|
| Recording Date: | 07/08/2002 | Orig Recording Date: | 05/15/2001 |
| Document Number: | 2002.48004 | Orig Doc Number: | 28259 |
| Document Type: | RELEASE | | |

---

**History Record #: 22**
***Finance:***

| | | | |
|---|---|---|---|
| Recording Date: | 06/20/2002 | Finance Type: | REFINANCE |
| Document Number: | 2002.44084 | Mortgage Loan Type: | |
| Document Type: | TRUST DEED/MORTGAGE | Mortgage Term: | |
| Lender: | WASHINGTON MUTUAL FSB | Mortgage Rate Type: | VARIABLE |
| Loan Amount: | $590,000.00 | Mortgage Rate: | |
| Borrower: | MORGENSEN PATRICIA J | | |
| Borrower: | MORGENSEN DAVID A | | |

**History Record #: 23**
***Release:***

| | | | |
|---|---|---|---|
| Recording Date: | 06/06/2001 | Orig Recording Date: | 09/14/2000 |
| Document Number: | 2001.33923 | Orig Doc Number: | 44419 |
| Document Type: | RELEASE | | |

***REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015***
***-All Rights Reserved-***

*RMC*

**History Record #: 24**
***Finance:***

Recording Date: **05/15/2001**
Document Number: **2001.28259**
Document Type: **TRUST DEED/MORTGAGE**
Lender: **WASHINGTON MUTUAL FSB**
Loan Amount: **$537,000.00**
Borrower: **MORGENSEN DAVID A**
Borrower: **MORGENSEN PATRICIA J**

Finance Type: **REFINANCE**
Mortgage Loan Type:
Mortgage Term:
Mortgage Rate Type: **VARIABLE**
Mortgage Rate:

**History Record #: 25**
***Release:***

Recording Date: **10/17/2000**
Document Number: **2000.49975**
Document Type: **RELEASE**

Orig Recording Date: **06/09/1999**
Orig Doc Number: **40303**

**History Record #: 26**
***Sale/Transfer:***

Recording Date: **09/14/2000**
Document Number: **2000.44418**
Document Type: **DEED TRANSFER**
Title Company: **FIRST AMERICAN TITLE**
Buyer: **MORGENSEN,DAVID A & PATRICIA J**
Seller: **WILLIAMS ROBERT G & SUSAN E**

Sale Date:
Sale Price: **$649,000.00**
Sale Type:

***Finance:***

Recording Date: **09/14/2000**
Document Number: **2000.44419**
Document Type: **TRUST DEED/MORTGAGE**
Lender: **WASHINGTON MUTUAL FSB**
Loan Amount: **$518,700.00**
Borrower: **MORGENSEN DAVID A**
Borrower: **MORGENSEN PATRICIA J**

Finance Type: **RESALE**
Mortgage Loan Type:
Mortgage Term:
Mortgage Rate Type: **VARIABLE**
Mortgage Rate:

**History Record #: 27**
***Finance:***

Recording Date: **06/09/1999**
Document Number: **1999.40303**
Document Type: **TRUST DEED/MORTGAGE**
Lender: **MONTEREY BAY BANK**
Loan Amount: **$385,605.00**
Borrower: **WILLIAMS SUSAN E**
Borrower: **WILLIAMS ROBERT G**

Finance Type: **CONSTRUCTION**
Mortgage Loan Type: **CONSTRUCTION**
Mortgage Term:
Mortgage Rate Type: **FIXED**
Mortgage Rate:

**History Record #: 28**
***Sale/Transfer:***

Recording Date: **09/30/1993**
Document Number: **1993.72305**
Document Type: **DEED TRANSFER**
Title Company: **SANTA CRUZ TITLE**
Buyer: **WILLIAMS,ROBERT G & SUSAN E**
Seller: **GREAT PACIFIC IN**

Sale Date:
Sale Price: **$45,000.00**
Sale Type: **FULL VALUE**

***Finance:***

Recording Date: **09/30/1993**
Document Number:
Document Type: **TRUST DEED/MORTGAGE**
Lender: **SELLER**
Loan Amount: **$36,000.00**
Borrower: **WILLIAMS ROBERT G**
Borrower: **WILLIAMS SUSAN E**

Finance Type: **RESALE**
Mortgage Loan Type:
Mortgage Term:
Mortgage Rate Type: **FIXED**
Mortgage Rate:

**Voluntary Lien Date Ranges for Santa Cruz, CA**

| | Sales | Mortgages | Assignments | Releases | Foreclosures |
|---|---|---|---|---|---|
| Start Date | 01/04/1988 | 01/03/1989 | 01/01/2005 | 01/01/2005 | 01/01/2005 |
| End Date | 02/26/2015 | 02/26/2015 | 02/26/2015 | 02/26/2015 | 02/26/2015 |

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*

*RMC*

Data Source: First American Title www.datatree.com

1. Item 26. David and Patricia Morgensen acquired property for $649,000 on or about 9/14/00, financing purchase with Washington Mutual Bank loan for a loan to value ratio of 80%.
2. Items 13-14, 18-24 . Prior loans of Morgensens and related releases.
3. Items 11-12, 15-17. Transfer between related parties or that otherwise did not change equity interest.
4. Item 16. Primary active loan that is the subject of this report.
5. Items 10 and 12. Junior liens that may still be active.
6. Item 9. Assignment of Deed of Trust made by foreclosure document company employee to Mortgage Electronic Registration Systems, Inc. (MERS) and not into the identified trust by the closing date and not by the Depositor of the trust. Document signer a noted paid document signer and Florida notary that deceptively stated she was Vice President of Downey Savings and Loan that was based in Newport Beach, CA without disclosure of true role.
7. Item 4. Foreclosure actions related to second loan.
8. Items 1-2 and 5-8. Foreclosure actions dependent upon invalid Assignment item 9. Items 1-2 also dependent upon invalid Assignment item 3.
9. Item 3. Assignment of Deed of Trust from MERS to Central Mortgage Company, servicing agent for identified securitized trust. Document signed by Assignee employee by posing as a MERS representative without disclosure of true role. Document dependent upon invalid Assignment item 9.

***Items 25 and 27-28 relate to prior ownership***

*REDEEMED MORTGAGE CONSULTANTS Copyright 2012 - 2015*
*-All Rights Reserved-*